F. L. LIPSCOMB, as Sheriff of Taylor County, Florida, *Plaintiff in Error,* vs. BASELIOS GIALOURAKIS, *Defendant in Error.*

Division B.
Opinion filed March 12, 1931.

*J. R. Kelley, Claude Pepper* and *W. B. Davis,* for Plaintiff in Error;

*Phillips & Thompson* and *Archie Clement,* for Defendant in Error.

BUFORD, C. J.—In this case the defendant in error was charged by the indictment returned in the Circuit Court of Taylor County as follows:

"The Grand Jurors of the State of Florida, duly chosen, empanelled and sworn diligently to inquire and

true presentment make in and for the body of the County of Taylor, upon their oath present that, John Kaloroukas, Andreas Hatzehaistodoulon, Damianas Gialourakis, George Georgiades, Baseleos Gialourakis and Kostas Temaras late of said County, on the 23rd day of July A. D. 1930, in the County and State aforesaid, did maintain and use, for the purpose of catching and taking commercial sponges from the Gulf of Mexico in waters less than five fathoms deep north of twenty-six and one-half degrees north latitude and north of the mouth of the Caloosahatchee River in Lee County, Florida, within the territorial limits of the State of Florida, diving suits, helmets and other apparatus used by deep sea divers, contrary to the statutes for such cases made and provided and against the peace and dignity of the State of Florida.

### SECOND COUNT.

And the said Grand Jurors aforesaid, upon their oaths aforesaid, further present and say that the said John Kaloroukas, Andreas Hatzehaistodoulon, Damianas Gialourkakis, George Georgiades, Baseleos Gialourakis and Kostas Temaras late of said County, on the 23rd day of July, 1930, in the said County of Taylor and State of Florida, did unlawfully take and catch by the use and means of diving suits, helmets and other apparatus used by deep sea divers and by other means and methods, a better description of which is to the Grand Jurors unknown, in the waters of the Gulf of Mexico, within the territorial limits of the State of Florida, commercial sponges measuring when wet less than five inches in their maximum diameter, contrary to the statutes for such cases made and provided and against the peace and dignity of the State of Florida.''

Being taken into custody by the sheriff, he sued out writ of habeas corpus and on hearing was discharged. The case is before us on writ of error to the judgment discharging the accused.

It is contended that the indictment charges no offense against the laws of the State of Florida; first, because chapter 14545 Acts of 1929 is invalid; that it is a special law and was not passed by the legislature as required by section 21, article III of the Constitution as amended in 1928.

Next, it is contended that the indictment shows on its face that the offense was not committed within the jurisdiction of Taylor County. It is also contended that the indictment does not sufficiently charge a violation of the law.

Next, it is contended that the statute is invalid because it is class legislation.

Disposition of the first question will dispose of the two latter questions.

Chapter 14545 Acts 1929 in the first place attempts to amend section 8087 Compiled General Laws of Florida. That compilation known as Compiled General Laws of Florida, 1927, has never been adopted as the statutory law of Florida and, therefore, it is doubtful whether a statute may be validly amended by reference to a section of that compilation. This Act goes further, however, and purports to amend section 4 chapter 7389 Acts of the Legislature of 1917, relating to diving suits, helmets etc. used by deep sea divers. The reference to chapter 7389 Acts of the Legislature of 1917 as used in this Act is hardly sufficient because referring to chapter 7389 we find it to be "An Act to Protect and Regulate the Sponge Fishing Industry of the State of Florida and to Provide a Penalty for the Violation of this Act and Repealing all Laws in Conflict therewith". Aside from these infirmities, chapter 14545 attempts to convert by amendment the general law into a special law by limiting the territory in which it is applicable and in its passage the Legislature did not comply or attempt to comply with the provisions contained in section 21 article III of the Constitution.

The chapter must, therefore, be held to be invalid.

Chapter 14545 being invalid because of not having been passed by the Legislature in conformity with organic law, the original legislative act remains in full force and effect. That Act as reenacted as section 5846 R. G. S. of Fla., now cited as 8087 C. G. L. of Fla., is as follows:

"It shall be unlawful for any person, persons, firm or corporation to maintain and use for the purpose of catch-ing or taking commercial sponges from the Gulf of Mexico, or the Straits of Florida or other waters within the territorial limits of the State of Florida, diving suits, helmets or other apparatus used by deep sea divers.

Anyone violating any of the provisions of this section shall be fined in the sum not exceeding five hundred dollars or by imprisonment not exceeding one year, or by by both such fine and imprisonment."

The indictment sufficiently charges the offense under the provisions of the section above quoted and this section con-tains nothing that may be said to be discriminatory.

All the bottoms of the gulfs and natural bays within the limits of the State of Florida passed to the State of Florida in its sovereign capacity when Florida was ad-mitted into the Union. The boundaries of the State of Florida as prescribed by the Constitution are as follows:

Commencing at the mouth of the river Perdido; from thence up the middle of said river to where it intersects the south boundary line of the State of Alabama, and the thirty-first degree of north latitude; thence due east to the Chattahoochee river; thence down the middle of said river to its confluence with the Flint River; thence straight to the head of the St. Mary's river; thence down the middle of said river to the Atlantic ocean; thence southeastwardly along the coast to the edge of the Gulf Stream; thence southwestwardly along the edge to the Gulf Stream and Florida Reefs to, and including the

Tortugas Islands; thence northeastwardly to a point three leagues from the mainland; thence northwestwardly three leagues from the land to a point west of the mouth of the Perdido river; thence to the place of beginning.''

Section 1 of article VIII of the Constitution provides as follows:

''The State shall be divided into political divisions to be called counties.''

It therefore appears that all of the State of Florida was required to be divided into counties and, therefore, it must be construed that counties bordering on the Gulf of Mexico include that area within the Gulf adjacent to the up-land and out to the State boundary line. Unless otherwise provided by statute, the rule applying to the territorial boundaries of riparian right should be applied to locating the boundary lines of counties from the shore line to the State line in the Gulf and that is, that upon reaching the highwater mark the line is extended into the water at right angles with the shore line. See Panama City I. & T. Co. vs. A. & St. A. B. Ry. Co., 71 Fla. 419, 71 Sou. 608, wherein it is said:

''A conveyance of uplands bordering on navigable water 'with riparian rights connected therewith' covers the space between lines drawn at right angles from the shore line 'to the edge of the channel' where the channel runs parallel or practically so with the shore line, no contrary intent appearing.''

The statute defining the boundaries of Taylor Cunty is as follows:

''The County of Taylor shall have the following boundaries, to-wit: Beginning at the south of the Aucilla river, and running up said river to the center of township two; thence east to the dividing line between ranges eight and nine; thence south to the line dividing town-

ships two and three; thence along said line due east to where said line is intersected by the line forming the western boundary of Lafayette County; thence down the western boundary of Lafayette County to the Gulf of Mexico; thence along said Gulf to the mouth of the Aucilla river.''

The words ''To the Gulf of Mexico'' in defining boundaries of Counties will be construed to mean *to the boundary line of the State of Florida in the Gulf of Mexico.*

The State of Florida may exercise its powers of sovereignty over the waters of the Gulf of Mexico within the boundary lines of the State of Florida and may regulate industries having as their basis the products of such waters, or the bottoms thereof, when carried on by persons, firms or corporations, and in exercising such sovereignty may prescribe the means and methods by which products of such waters or the bottoms thereof, may be taken therefrom for private and/or commercial uses.

The State may enforce its sovereign powers and rights through its courts and for this purpose the courts of the State have jurisdiction over such areas and the Circuit Court of Taylor County has jurisdiction to enforce the sovereign rights of the State over that portion of the Gulf of Mexico lying between the shore of the Gulf and the State line three leagues distant from the shore and between lines drawn at right angles from the shore line from the mouth of the Aucilla River to the State boundary line and the line drawn at right angles from the shore line from where the Western boundary line of Lafayette County touches the waters of the Gulf to the State boundary line.

It therefore, appears that the indictment sufficiently charges a statutory offense to have been committed within the jurisdiction of the Circuit Court of Taylor County.

The judgment should be reversed and it is so ordered.

Reversed.

WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., AND HUTCHISON, Circuit Judge, concur.

DAVIS, J., disqualified.