LAMBIRIS SKIRIOTES v. STATE.

197 So. 736

En Banc

Opinion Filed September 6, 1940

*W. B. Dickenson, Dickenson & Dickenson,* for Petitioner;
*George Couper Gibbs,* Attorney General, *William Fisher, Jr.,* Assistant Attorney General, for Respondent.

TERRELL, C. J.—Lambiris Skiriotes was tried and convicted in the County Court of Pinellas County for using diving apparatus in the taking of sponge from the Gulf of Mexico contrary to Section 8087, Compiled General Laws of 1927. His conviction was on appeal affirmed by the circuit court so he petitions this Court to review it by certiorari.

Three questions are urged for determination but all turn on that of whether the provisions of the Constitution of 1885 fixing the western boundary of Florida at three marine leagues (nine nautical miles) from the shore is violative of the Constitution of the United States, including treaties and executive orders made pursuant to the Federal Constitution.

There is no dispute about the facts. It is admitted that the alleged offense was committed within the State if the boundary as fixed by the Constitution of 1885 is controlling. The case was tried by the court on waiver of jury and stipulation as to material facts. Petitioner contends that the marine boundary of the State is fixed by international law at one marine league from shore and that the offense was committed beyond this limit.

By the Tenth Amendment to the Federal Constitution the States reserved all rights and powers which they did

not in terms surrender to the United States. In Manchester v. Massachusetts, 139 U. S. 240, 11ʹ Sup. Ct. 559, 35 L. Ed. 159, the Supreme Court approved the doctrine that a State may determine its own marine boundaries provided it does not exceed the limits recognized by the law of nations. For the purpose of fixing marine boundaries in this country, the States may be considered as nations. As a practical matter, the marine boundary of a State may be fixed by the latter with the approval of Congress and may be limited to one marine league.

At the time of the Revolution, each State was an independent nation and determined its marine boundary. Such was the practice of each State subsequently admitted to the Union. In the absence of affirmative action on this point the Supreme Court of the United States has generally assumed the sovereignty of the State to extend one marine league from shore. This distance was fixed because it was at the time considered to be the range of a cannon shot and that the State should be permitted to protect that distance from its shore. This distance has in many instances been increased within reason and we find nothing in the law of nations to forbid it.

The western boundary of Florida was fixed at three marine leagues from the mainland by the Constitution of 1868. In June of the same year but after the adoption of the Constitution, Congress passed an Act admitting Florida and other southern States to the Union, the said Act making reference to the Constitution of 1868. The Constitution of 1885 repeated the boundary defined in the Constitution of 1868 and the latter has continued to be the boundary to the present.

The petitioner contends that the Act of Congress readmitting Florida to the Union did not constitute an ap-

proval of the boundary but that, if it did, such approval was subsequently withdrawn by treaties entered into between the United States and certain foreign countries including executive orders made by the President and the Cabinet, all of which referred to the boundary of the United States as three marine leagues from the mainland.

It is true that by international law, one marine league is generally considered the distance over which a nation has exclusive jurisdiction and such waters are considered as under the jurisdiction of the sovereign but it has never been determined that such limits were final. Treaties and legislative Acts passed pursuant to the Constitution are clothed with equal dignity and by the Constitution are made the supreme law of the land. This of course presupposes that they relate to the same subject. The State of Florida was not a party to any of the treaties or executive orders relied on by petitioner and none of them has any reference to the boundary of Florida. Such as they did connote it was one marine league from shore.

Petitioner also contends that if Florida can extend its boundaries to three marine leagues from shore, then there is no limit to the extent that they may be extended. The answer to this question is that such extensions must be approved by Congress and when done, its approval is final. We do not infer that any extension would be approved by Congress. Certainly no unreasonable extension or one that would transcend international law would be approved. Jones v. United States, 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691, the Supreme Court held that the question of who is the sovereign *de jure* or *de facto* is a political rather than a judicial question. The courts are bound by the legislative determination of such questions.

In support of this position it may be pointed out that

the boundaries of the sister States of Alabama, Mississippi, Louisiana, and Texas were fixed by their respective Legislatures at the time of admission, some at three marine leagues from the shore, some at six and Louisiana at nine, yet all said boundaries were approved by Acts of Congress in similar manner as that approving the boundary of Florida and some of them have been on the books more than one hundred years. A complete discussion of the boundary of Louisiana and Mississippi is found in Louisiana v. Mississippi, 202 U. S. 1, 26 Sup. Ct. 408, 50 L. Ed. 913.

Both parties to this cause rely on Manchester v. Massachusetts, and Louisiana v. Mississippi, *supra,* to support their contention. The direct question presented here was not raised in either one of these cases. In the former case the Court held that as between nations, the minimum limit of the territorial jurisdiction of a nation over tide waters is a marine league from the coast and that a State may define its marine boundaries within these limits.

In the latter case, it was held that as between States long acquiescence in the assertion of a particular boundary and the exercise of sovereignty over the territory within it should be accepted as conclusive whatever the international rule may be in respect of acquisition by prescription of large tracts of country claimed by two States.

Since one marine league is considered by this line of cases as the "minimum" width of the marine belt and no maximum is prescribed all of the States referred to have gone on the theory that circumstances warranted a widening of their marine belt and have done so but in keeping with and to the extent that the range of artillery has been lengthened. If the range of a cannon shot controlled the width of the marine belt in the first instance, certainly it may be widened with length of the range. This procedure

has been long acquiesced in, was approved by Congress, and is not prohibited by the Constitution. We are not convinced that it should be disturbed on the showing made.

From the decided cases, it appears that any State by approval of Congress has a right to fix its marine boundaries and that if fixed in reason, such right has never been questioned by Congress by any other nation or citizen thereof. Long acquiescence in a boundary so fixed concludes the question. Indiana v. Kentucky, 136 U. S. 479, 10 Sup. Ct. 1051, 34 L. Ed. 329; Maryland v. West Virginia, 217 U. S. 1, 30 Sup. Ct. 268, 54 L. Ed. 645; Pope v. Blanton, 10 Fed. Supp. 18; Lipscomb v. Gialourakis, 101 Fla. 1130, 133 So. 104; Cunningham v. Skiriotes, 101 Fed. (2nd) 635.

It follows that the western boundary of Florida as defined in its Constitution at three marine leagues from shore is conclusive and being so by the agreed statement of facts, petitioner was guilty of violating Section 8087, Compiled General Laws of 1927, so the writ of certiorari is denied.

It is so ordered.

WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.