SKIRIOTES *v.* FLORIDA.

No. 658. Argued March 14, 1941.—Decided April 28, 1941.

*Mr. W. B. Dickenson* for appellant.

*Mr. Nathan Cockrell,* Assistant Attorney General of Florida, with whom *Mr. J. Tom Watson,* Attorney General, was on the brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Appellant, Lambiris Skiriotes, was convicted in the county court of Pinellas County, Florida, of the use on March 8, 1938, of diving equipment in the taking of sponges from the Gulf of Mexico off the coast of Florida

in violation of a state statute. Compiled General Laws of Florida (1927), § 8087. The conviction was affirmed by the Supreme Court of Florida (144 Fla. 220; 197 So. 736) and the case comes here on appeal.

The case was tried without a jury and the facts were stipulated. The statute, the text of which is set forth in the margin,[1] forbids the use of diving suits, helmets or other apparatus used by deep-sea divers, for the purpose of taking commercial sponges from the Gulf of Mexico, or the Straits of Florida or other waters within the territorial limits of that State.

The charge was that appellant was using the forbidden apparatus "at a point approximately two marine leagues from mean low tide on the West shore line of the State of Florida and within the territorial limits of the County of Pinellas." The state court held that the western boundary of Florida was fixed by the state constitution of 1885 at three marine leagues (nine nautical miles) from the shore; that this was the same boundary which had been defined by the state constitution of 1868 to which the Act of Congress had referred in admitting the State of Florida to representation in Congress. Act of June 25, 1868, 15 Stat. 73. The state court sustained the right of the State to fix its marine boundary with

---

[1] The statute, originally § 4 of Chapter 7389 of the Laws of Florida of 1917, carried forward as § 5846 of the Revised General Statutes of Florida and as § 8087 of the Compiled General Laws of 1927, is as follows:

"It shall be unlawful for any person, persons, firm or corporation to maintain and use for the purpose of catching or taking commercial sponges from the Gulf of Mexico, or the Straits of Florida or other waters within the territorial limits of the State of Florida, diving suits, helmets or other apparatus used by deep-sea divers.

"Anyone violating any of the provisions of this section shall be fined in the sum not exceeding five hundred dollars or by imprisonment not exceeding one year, or by both such fine and imprisonment." See *Lipscomb* v. *Gialourakis*, 101 Fla. 1130; 133 So. 104.

the approval of Congress, and concluded that the statute was valid in its application to appellant's conduct.

By motions to quash the information and in arrest of judgment, appellant contended that the constitution of Florida fixing the boundary of the State and the statute under which he was prosecuted violated the Constitution and treaties of the United States; that the criminal jurisdiction of the courts of Florida could not extend beyond the international boundaries of the United States and hence could not extend "to a greater distance than one marine league from mean low tide" on the mainland of the State and adjacent islands included within its territory.

In support of this contention appellant invoked several provisions of the Constitution of the United States, to wit, Article I, § 10, Clauses 1 and 3, Article II, § 2, Clause 2, Article VI, and the Fourteenth Amendment. Appellant also relied upon numerous treaties of the United States, including the Treaty with Spain of February 22, 1919, and the treaties with several countries, signed between 1924 and 1930, inclusive, for the prevention of smuggling of intoxicating liquors. There were also introduced in evidence diplomatic correspondence and extracts from statements of our Secretaries of State with respect to the limits of the territorial waters of the United States. These contentions were presented to the highest court of the State and were overruled.

The first point of inquiry is with respect to the status of appellant. The stipulation of facts states that appellant "is by trade and occupation a deep-sea diver engaged in sponge fishery, his residence address being at Tarpon Springs, Pinellas County, Florida," and that he "has been engaged in this business for the past several years." Appellant has not asserted or attempted to show that he is not a citizen of the United States, or that he is a citizen of any State other than Florida, or

that he is a national of any foreign country. It is also significant that in his brief in this Court, replying to the State's argument that as a citizen of Florida he is not in a position to question the boundaries of the State as defined by its constitution, appellant has not challenged the statement as to his citizenship, while he does contest the legal consequences which the State insists flow from that fact.

It further appears that upon appellant's arrest for violation of the statute, he sued out a writ of *habeas corpus* in the District Court of the United States and was released, but this decision was reversed by the Circuit Court of Appeals. *Cunningham* v. *Skiriotes,* 101 F. 2d 635. That court thought that the question of the statute's validity should be determined in orderly procedure by the state court subject to appropriate review by this Court, but the court expressed doubt as to the right of the appellant to raise the question, saying: "Skiriotes states he is a citizen of the United States resident in Florida, and therefore is a citizen of Florida. His boat, from which his diving operations were conducted, we may assume was a Florida vessel, carrying Florida law with her, but of course as modified by superior federal law." *Id.,* pp. 636, 637.

In the light of appellant's statements to the federal court, judicially recited, and upon the present record showing his long residence in Florida and the absence of a claim of any other domicile or of any foreign allegiance, we are justified in assuming that he is a citizen of the United States and of Florida. Certainly appellant has not shown himself entitled to any greater rights than those which a citizen of Florida possesses.

In these circumstances, no question of international law, or of the extent of the authority of the United States in its international relations, is presented. International law is a part of our law and as such is the law

of all States of the Union (*The Paquete Habana,* 175 U. S. 677, 700), but it is a part of our law for the application of its own principles, and these are concerned with international rights and duties and not with domestic rights and duties. The argument based on the limits of the territorial waters of the United States, as these are described by this Court in *Cunard Steamship Co.* v. *Mellon,* 262 U. S. 100, 122, and in diplomatic correspondence and statements of the political department of our Government, is thus beside the point. For, aside from the question of the extent of control which the United States may exert in the interest of self-protection over waters near its borders, although beyond its territorial limits,[2] the United States is not debarred by any rule of international law from governing the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed. With respect to such an exercise of authority there is no question of international law,[3] but solely of the purport of the municipal law which establishes the duty of the citizen in relation to his own government. *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, 355, 356; *United States* v. *Bowman,* 260 U. S. 94; *Cook* v. *Tait,* 265 U. S. 47; *Blackmer* v. *United States,* 284 U. S. 421, 437. Thus, a criminal statute dealing with acts that are directly injurious

[2] See Jessup, "The Law of Territorial Waters and Maritime Jurisdiction," Introductory Chapter, p. XXXIII, also pp. 9 *et seq.,* 80 *et seq.; Church* v. *Hubbart,* 2 Cranch 187; *The Grace and Ruby,* 283 F. 475; *The Henry L. Marshall,* 286 F. 260, 292 F. 486; *United States* v. *Ford,* 3 F. 2d 643; 40 Harv. L. R. 1.

[3] Oppenheim, International Law, 4th ed., Vol. I, § 145, p. 281; Story, Conflict of Laws, 8th ed., § 540, p. 755; Moore's International Law Digest, Vol. II, pp. 255, 256; Hyde, International Law, Vol. I, § 240, p. 424; Borchard, Diplomatic Protection of Citizens Abroad, § 13, pp. 21, 22.

to the government, and are capable of perpetration without regard to particular locality, is to be construed as applicable to citizens of the United States upon the high seas or in a foreign country, though there be no express declaration to that effect. *United States* v. *Bowman, supra,*[4] The *Bowman* case arose under § 35 of the Criminal Code. 18 U. S. C., § 80. Another illustration is found in the statute relating to criminal correspondence with foreign governments. 18 U. S. C., § 5. In *Cook* v. *Tait, supra,* we held that Congress could impose a tax upon income received by a citizen of the United States who was domiciled in a foreign country although the income was derived from property there located. In *Blackmer* v. *United States, supra,* the validity of an Act of Congress requiring a citizen of the United States residing in France to return to this country for the purpose of giving testimony and the service of a subpoena upon him personally by an American consul were sustained.

For the same reason, none of the treaties which appellant cites are applicable to his case. He is not in a position to invoke the rights of other governments or of the nationals of other countries. If a statute similar to the one in question had been enacted by the Congress for the protection of the sponge fishery off the coasts of the United States there would appear to be no ground upon which appellant could challenge its validity.

The question then is whether such an enactment, as applied to those who are subject to the jurisdiction of Florida, is beyond the competency of that State. We have not been referred to any legislation of Congress with which the state statute conflicts. By the Act of

---

[4] As to venue of prosecutions for offenses committed upon the high seas or elsewhere out of the jurisdiction of any particular state or district see 28 U. S. C., § 102.

August 15, 1914 [5] (38 Stat. 692, 16 U. S. C., § 781), Congress has prohibited "any citizen of the United States, or person owing duty of obedience to the laws of the United States" from taking "in the waters of the Gulf of Mexico or the Straits of Florida outside of state territorial limits" any commercial sponges which are less than a given size, or to possess such sponges or offer them for sale. But that Act is limited to the particular matter of size and does not deal with the divers' apparatus which is the particular subject of the Florida statute. According to familiar principles, Congress having occupied but a limited field, the authority of the State to protect its interests by additional or supplementary legislation otherwise valid is not impaired. *Reid* v. *Colorado,* 187 U. S. 137, 147, 150; *Savage* v. *Jones,* 225 U. S. 501, 533; *Mintz* v. *Baldwin,* 289 U. S. 346, 350; *Kelly* v. *Washington,* 302 U. S. 1, 10. It is also clear that Florida has an interest in the proper maintenance of the sponge fishery and that the statute so far as applied to conduct within the territorial waters of Florida, in the absence of conflicting federal legislation, is within the police power of the State. *Manchester* v. *Massachusetts,* 139 U. S. 240, 266. See, also, *Cooley* v. *Board of Port Wardens,* 12 How. 299; *Morgan's S.S. Co.* v. *Louisiana,* 118 U. S. 455; *Compagnie Francaise* v. *Board of Health,* 186 U. S. 380; *Minnesota Rate Cases,* 230 U. S. 352, 402–410; *California* v. *Thompson, post,* p. 109.. Nor is there any repugnance in the provisions of the statute to the equal protection clause of the Fourteenth Amendment. The statute applies equally to all persons within the jurisdiction of the State.

Appellant's attack thus centers in the contention that the State has transcended its power simply because the

---

[5] This Act repealed the Act of June 20, 1906, 34 Stat. 313, which was before this Court in the case of *The Abby Dodge,* 223 U. S. 166.

statute has been applied to his operations inimical to its interests outside the territorial waters of Florida. The State denies this, pointing to its boundaries as defined by the state constitution of 1868, which the State insists had the approval of Congress and in which there has been acquiescence over a long period. See *Lipscomb* v. *Gialourakis,* 101 Fla. 1130, 1134, 1135; 133 So. 104; *Pope* v. *Blanton,* 10 F. Supp. 18, 22.[6] Appellant argues that Congress by the Act of June 25, 1868,[7] to which the state court refers, did not specifically accept or approve any boundaries as set up in the state constitution but merely admitted Florida and the other States mentioned to representation in Congress. And, further, that if Congress can be regarded as having approved the boundaries defined by the state constitution, these have been changed by the treaties with foreign countries relating to the smuggling of intoxicating liquors, in which the principle of the three-mile limit was declared.

But putting aside the treaties, which appellant has no standing to invoke, we do not find it necessary to resolve the contentions as to the interpretation and effect of the Act of Congress of 1868. Even if it were assumed that the *locus* of the offense was outside the territorial waters of Florida, it would not follow that the State could not prohibit its own citizens from the use of the described divers' equipment at that place. No question as to the authority of the United States over these waters, or over the sponge fishery, is here involved. No right of a citizen of any other State is here asserted. The question is solely between appellant and his own State. The present case thus differs from that of *Manchester* v. *Massachusetts, supra,* for there the regulation by Massa-

---

[6] The bill in this case was dismissed because of the absence of the jurisdictional amount. *Pope* v. *Blanton,* 299 U. S. 521.

[7] 15 Stat. 73.

chusetts of the menhaden fisheries in Buzzards Bay was sought to be enforced as against citizens of Rhode Island (*Id.,* p. 242) and it was in that relation that the question whether Buzzards Bay could be included within the territorial limits of Massachusetts was presented and was decided in favor of that Commonwealth. The question as to the extent of the authority of a State over its own citizens on the high seas was not involved.

If the United States may control the conduct of its citizens upon the high seas, we see no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the State has a legitimate interest and where there is no conflict with acts of Congress. Save for the powers committed by the Constitution to the Union, the State of Florida has retained the status of a sovereign. Florida was admitted to the Union "on equal footing with the original States, in all respects whatsoever."[8] And the power given to Congress by § 3 of Article IV of the Constitution to admit new States relates only to such States as are equal to each other "in power, dignity and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself." *Coyle* v. *Smith,* 221 U. S. 559, 567.

There is nothing novel in the doctrine that a State may exercise its authority over its citizens on the high seas. That doctrine was expounded in the case of *The Hamilton,* 207 U. S. 398. There, a statute of Delaware giving damages for death was held to be a valid exercise of the power of the State, extending to the case of a citizen of that State wrongfully killed on the high seas in a vessel belonging to a Delaware corporation by the negligence of another vessel also belonging to a Delaware corporation. If it be said that the case was one of vessels and for the recognition of

---

[8] Act of March 3, 1845, 5 Stat. 742.

the formula that a vessel at sea is regarded as part of the territory of the State, that principle would also be applicable here. There is no suggestion that appellant did not conduct his operations by means of Florida boats. That he did so conduct them was assumed by the Circuit Court of Appeals in dealing with appellant's arrest in *Cunningham* v. *Skiriotes, supra,* and that reasonable inference has not in any way been rebutted here.

But the principle recognized in *The Hamilton, supra,* was not limited by the conception of vessels as floating territory. There was recognition of the broader principle of the power of a sovereign State to govern the conduct of its citizens on the high seas. The court observed that "apart from the subordination of the State of Delaware to the Constitution of the United States" there was no doubt of its power to make its statute applicable to the case at bar. And the basic reason was, as the court put it, that when so applied "the statute governs the reciprocal liabilities of two corporations, existing only by virtue of the laws of Delaware, and permanently within its jurisdiction, for the consequences of conduct set in motion by them there, operating outside the territory of the State, it is true, but within no other territorial jurisdiction." If confined to corporations, "the State would have power to enforce its law to the extent of their property in every case." But the court went on to say that "the same authority would exist as to citizens domiciled within the State, even when personally on the high seas, and not only could be enforced by the State in case of their return, which their domicil by its very meaning promised, but in proper cases would be recognized in other jurisdictions by the courts of other States." That is, "the bare fact of the parties being outside the territory in a place belonging to no other sovereign would not limit the authority of the State, as accepted by civilized theory." *The Hamilton, supra,* p. 403. When its action does not conflict with

federal legislation, the sovereign authority of the State over the conduct of its citizens upon the high seas is analogous to the sovereign authority of the United States over its citizens in like circumstances.

We are not unmindful of the fact that the statutory prohibition refers to the "Gulf of Mexico, or the Straits of Florida or other waters within the territorial limits of the State of Florida." But we are dealing with the question of the validity of the statute as applied to appellant from the standpoint of state power. The State has applied it to appellant at the place of his operations and if the State had power to prohibit the described conduct of its citizen at that place we are not concerned from the standpoint of the Federal Constitution with the ruling of the state court as to the extent of territorial waters. The question before us must be considered in the light of the total power the State possesses (*Castillo* v. *McConnico,* 168 U. S. 674, 684; *Hebert* v. *Louisiana,* 272 U. S. 312, 316; *United Gas Co.* v. *Texas,* 303 U. S. 123, 142), and so considered we find no ground for holding that the action of the State with respect to appellant transcended the limits of that power.

The judgment of the Supreme Court of Florida is

*Affirmed.*