Arthur J. McQUADE, as Administrator of the goods, chattels and credits of Argyrios Depountis,* Libelant,

v.

COMPANIA DE VAPORES SAN ANTONIO, S. A., The S.S. Eurystheus, her engines, tackle, etc., Respondents.

United States District Court
S. D. New York.

Feb. 1, 1955.

Lebovici & Safir, New York City, for libelant, by Herbert Lebovici, New York City, of counsel.

Renato C. Giallorenzi, New York City, for respondents, by Renato C. Giallorenzi, Paul M. Jones, New York City, of counsel.

GODDARD, District Judge.

This is an action on behalf of an alien seaman against the ship Eurystheus, and her owners, for wages, vacation pay and transportation expenses from the port of discharge to the port of engagement said to be due on account of an alleged violation of agreement in discharging the seaman from the ship's service.

Depountis was a Greek national who signed on at Mobile, Alabama, on August 16, 1949, to the Persian Gulf and such other port and places in any part of the world as the master may direct, and back to a final port of discharge. On November 8, 1949, he was discharged at Bandar Shahpour, Persia, allegedly without his consent.

Respondent, Compania De Vapores San Antonio S. A., owner of the Eurystheus, is a corporation doing business in the United States and incorporated under the laws of Panama.

The ship was registered in Honduras and carried the flag of that country.

---

* The original libelant, Argyrios Depountis has died and Arthur J. McQuade has been appointed Administrator.

Respondent has moved the court to decline jurisdiction in this action between aliens.

The libelant sues under the law of Panama, the domicile of the shipowner. The answer of respondent denies that the law of Panama applies and alleges that the law of Honduras applies, and that if the law of Panama is applicable the suit is barred as not timely.

A treaty[1] between Honduras and the United States provides that:

"A consular officer shall have exclusive jurisdiction over controversies arising out of the internal order of private vessels of his country * * * [and] shall also have jurisdiction over issues concerning the adjustment of wages and the execution of contracts relating thereto provided the local laws so permit."

In an affidavit of Juan F. Funes, Consul General of Honduras in New York, which has been submitted, he states that his office is prepared to hear libelant's claim and to pass upon the merits so that a proper determination may be made under the laws of Honduras.

Panama and Honduras are both parties to a multilateral treaty, being a Code of Private International Law, approved in 1928 by the Sixth International American Conference. The treaty contains the following provisions:

"Article 274. The Nationality of ships is proved by the navigation license and the certificate of registration and has the flag as an apparent distinctive symbol.

\* \* \* \* \* \*

Article 279. The powers and obligations of the master and the liability of the proprietors and ship's husbands for their acts are also subject to the law of the flag.

\* \* \* \* \* \*

Article 281. The obligations of the officers and seamen and the internal order of the vessel are subject to the law of the flag." *League*

*of Nations Treaty Series*, 246, 326, vol. 86, 1929.

According to the plain terms of this treaty the appropriate law applicable to the internal order of the vessel is the law of the flag. Seamen's contracts are treated as matters of internal order or economy. See Taylor v. Atlantic Maritime Co., 2 Cir., 179 F.2d 597.

In the absence of treaty the result that the law of the flag controls seems to be called for under the conflict of laws principles recognized in this country as applied to maritime causes.

In Lauritzen v. Larsen, 345 U.S. 571, 585, 73 S.Ct. 921, 929, 97 L.Ed. 1254, Mr. Justice Jackson, writing for a majority of the court, stated:

"Each state under international law may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it. Nationality is evidenced to the world by the ship's papers and its flag."

And the court listed the factors which courts have taken into consideration in determining the applicable law. Among these were "Law of the Flag" and "Allegiance of the Defendant Shipowner." In respect to the former the court held that the weight given to the ensign overbears most other connecting events in determining applicable law. At page 585 of 345 U.S., at page 929 of 73 S.Ct. This is in accord with the view that where the domicile of the shipowner and the country of the flag differ it is the latter that controls. II Wheaton, International Law, 6 ed., 694.

Furthermore, since a State may grant its nationality to a merchant ship and the flag evidences nationality, then authority given by a State for a ship to fly its flag ought to be construed as constituting a grant of its nationality by the State to the ship. But States are permitted under international law to authorize vessels which are the property of foreigners to fly its flag. 1 Oppen-

---

[1]. Treaty of 1928, 45 Statutes at Large 2618, Article XXII, and see Article X.

heim, International Law, 3 ed., 422, § 261. It would seem to follow that a State, under international law, may be permitted to grant its nationality to a ship owned by foreigners and is considered to have done so when it authorizes the use of its maritime flag.

 In any event the conflict of laws rule in maritime cases is:

"In all matters relating to 'the internal economy or discipline' of a ship 'the law of the flag' controls." Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132, 139.

To the same effect are: Ozanic v. United States, 2 Cir., 165 F.2d 738, and cases cited on page 744; Dicey, Conflict of Laws, 3 ed., Rule 165(s) and American Law Institute, Conflict of Laws, § 45.

Gerradin v. United Fruit Company, 2 Cir., 60 F.2d 927, and Zielinski v. Empresa Hondurena de Vapores, D.C., 113 F.Supp. 93, are not contrary. In those cases the courts of our country disregarded the foreign registration in order "to enforce against American shipowners the obligations which our law places upon them." Lauritzen v. Larsen, supra, 345 U.S. 587, 73 S.Ct. 931. No similar reason is shown here for disregarding the ship's registration and flag.

Fisher v. Fisher, 250 N.Y. 313, 165 N.E. 460, 61 A.L.R. 1523; International Navigation Co. v. Lindstrom, 2 Cir., 123 F. 475, and The Havana, 2 Cir., 64 F. 496, are consistent with the law of the flag rule. "Where states, not nations, are involved the law of the domicile of the vessel is equivalent to the law of the flag * * *." Hickman v. Taylor, D.C., 75 F.Supp. 528, 533.

Libelant contends that respondent is bound by the laws of Panama in personam according to ordinary principles of contract and corporate law. But the cases relied on, Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193, The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, are not in point. As was stated in the Skiriotes case, 313 U.S. at page 72, 61 S.Ct. at page 927, " * * *

no question of international law * * * is presented." Those cases dealt with the respective jurisdictions of state and federal governments. Moreover, this contention would seem to be expressly answered to the contrary by the terms of the treaty cited above making the liability of the ship's owner subject to the law of the flag. Article 279, Code of Private International Law, *League of Nations Treaty Series*, supra, page 328.

 This is not a case calling for the application of American law. Signing articles in an American port does not bring American law into the case. Lauritzen v. Larsen, supra, 345 U.S. 588–589, 73 S.Ct. 931–932; Sonnesen v. Panama Transport Co., 298 N.Y. 262, 267, 82 N.E. 2d 569. Also the general maritime law as accepted in this country cannot apply. A mariner's contract, unlike a salvage or a tort claim, is not a matter of general maritime law, but is " 'a creature of the particular institutions of the country, to be applied and construed and explained by its own particular rules.' " The Belgenland, 114 U.S. 355, 362 and 367, 5 S.Ct. 860, 863, 29 L.Ed. 152.

If this suit is governed by the law of Panama it would seem that it is barred, as section 623 of the Panama Labor Law provides that a suit of this character must be brought within one year. Bournias v. Atlantic Maritime Co., D.C., 117 F.Supp. 864, now on appeal to the Court of Appeals, 2 Cir., 220 F.2d 152. The alleged wrongful discharge occurred in November, 1949, and suit was not instituted until February, 1954.

 I think the case at bar is not governed by the law of Panama, but is by the law of Honduras, and as libelant has alleged and seeks recovery solely under the law of Panama, and offered no proof of the law of Honduras, I am unable to determine the respective rights of the parties. I may not assume that the law of Honduras is the same as that of the United States. Ozanic v. United States, supra, 165 U.S. 744; Sonnesen v. Panama Transport Co., supra, 298 N.Y. 267, 82 N.E.2d 570.

In view of the circumstances I decline jurisdiction and dismiss the libel. The libelant is not confined to the courts of Honduras as the Honduran Consul in New York has jurisdiction to grant the relief libelant seeks.

Jurisdiction declined. Libel dismissed without costs.