Perry Lee **FELTON**, Appellant,

v.

**W. Randolph HODGES, H. V. Gibson, and Edward G. Little, Appellees.**

No. 23497.

United States Court of Appeals Fifth Circuit.

March 22, 1967.

Rehearing Denied May 8, 1967.

William B. Seidel, Fort Lauderdale, Fla., Henry R. Carr, Miami, Fla., for appellant.

Earl Faircloth, Atty. Gen., Sam Spector, Robert A. Chastain, Asst. Attys. Gen., Tallahassee, Fla., for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and BREWSTER, District Judge.

TUTTLE, Chief Judge:

The litigation which gave rise to this appeal resulted from the efforts of the defendants, certain officials of the Florida State Board of Conservation, to require appellant, a resident of Florida engaged in commercial salt water crawfishing, to abide by Florida's game and fish conservation laws in the pursuit of his crawfishing endeavers. Appellant argues that the crawfishing activities in which he was engaged were carried on beyond the seaward boundary of the State, and, perforce, out of the pale of the defendants' jurisdiction. On this basis, he sought to allege a cause of action against the defendants under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983.[1] Upon defendants' motion, the district court dismissed appellant's suit. Thus, the question presented on this appeal is whether the complaint states a cause of action under 42 U.S.C.A. § 1983, of which original jurisdiction is vested in the district court under 28 U.S. C.A. § 1343.

The substance of appellant's claim, albeit somewhat less than precisely alleged in his complaint, seems to be that agents of the appellees, acting under color of state authority, arrested him on numerous occasions, confiscated certain articles of personalty relative to to his crawfishing enterprise, caused him to post appearance bonds and to undergo other hardships, and that all

---

1. § 1983. Civil Action for Deprivation of Rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979.

of these harassments were inflicted because appellant was operating crawfish traps outside the territorial limits of the State of Florida during the closed season for crawfishing in that State.

Appellant contends that these alleged facts show that State officials have deprived him of his liberty and property for conducting activities over which the State has no rightful power of control, and that this amounts to a deprivation of due process of law actionable under Section 1983. No assertion is made that defendants have attempted to enforce Florida's conservation laws for a malicious purpose, or by the use of illicit methods. The complaint rests simply and solely on the proposition that any attempt whatsoever by the State of Florida to regulate appellant's crawfishing activities outside its territorial boundaries is violative of his constitutional rights.

In his brief, appellant cites Mounier v. Florida, 178 So.2d 714 (Fla.1965), for the proposition that Florida's conservation officials have no jurisdiction whatever beyond the three-mile offshore boundary fixed by the State's constitution. Were this correct, reversal and remand of this case would be required. But Mounier does not stand for that proposition. The case was decided on the very narrow ground that the spearfishing regulation violated by Mounier by its terms applied only to a specified area in Monroe County, and the State failed to prove that the alleged offense occurred within that specified area.[2] In the course of the opinion, the court said:

> "Before proceeding to a further discussion of the question, we deem it pertinent to point out that the statute above quoted makes spearfishing unlawful in an area 'in Monroe county known as the Upper Keys.' The language following the semicolon to the effect that said area shall include all waters under the jurisdiction of the State Board of Conservation, etc. must be construed as relating only to that area lying within Monroe County. *Whether the State Board of Conservation or the State of Florida through any other agency has jurisdiction over the waters or over the conduct of these defendants where the offense was committed or beyond that into the open ocean is a question not presented here and one on which we do not pass.*" Id. at 715–716. (Emphasis added.) (Footnote omitted.)

A strong dissenting opinion in *Mounier* points out that among the statutorily enumerated powers and duties of the Conservation Board's Division of Salt Water Fisheries is the duty "to regulate the operations of all fishermen and vessels of this state engaged in the taking of such fishery resources *within or without the boundaries of such state waters * * *.*" F.S.A. § 370.02(5). (Emphasis added.) Clearly, then, Florida has sought by legislative enactment to extend the jurisdiction of its conservation officials to activities such as those which appellant claims to have been engaged in here. If the State can properly do so under the federal constitution, the dismissal of this complaint must be affirmed.

That critical question has been authoritatively answered, and the answer is affirmative. In Skiriotes v. State of Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), the issue was whether a Florida statute forbidding the use of diving equipment in the taking of commercial sponges had been unconstitutionally applied to convict the appellant, who claimed immunity from Florida regulation by reason of the fact that he was operating outside the territorial limits of the state. Florida contended that her boundaries did in fact encompass the territory in question. The Supreme Court

2. Two other cases relied upon by appellant in a supplemental brief to support this proposition, United States v. Sands (S.D.Fla., No. 64-401-Cr-Cf, Jan. 11, 1965), and Gay v. Florida, 147 Fla. 690, 3 So.2d 514 (Fla.1941), are similarly inapposite.

found it unnecessary to decide this question. Instead, it said:

"Appellant's attack thus centers in the contention that the State has transcended its power simply because the statute has been applied to his operations inimical to its interests outside the territorial waters of Florida. The State denies this, pointing to its boundaries as defined by the state constitution of 1868, which the State insists had the approval of Congress and in which there has been acquiescence over a long period.

\*   \*   \*   \*   \*   \*

"[W]e do not find it necessary to resolve the contentions as to the interpretation and effect of the Act of Congress of 1868. *Even if it were assumed that the locus of the offense was outside the territorial waters of Florida, it would not follow that the State could not prohibit its own citizens from the use of the described divers' equipment at that place.* No question as to the authority of the United States over these waters, or over the sponge fishery, is here involved. No right of a citizen of any other State is here asserted. The question is solely between appellant and his own State. \*   \*   \*

"If the United States may control the conduct of its citizens upon the high seas, we see no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the State has a legitimate interest and where there is no conflict with acts of Congress." Id. at 75–77, 61 S.Ct. at 929. (Emphasis added.)

■ Following the approach dictated by *Skiriotes,* we must inquire whether

Florida has a legitimate interest in controlling the activities which it sought to regulate here. It appears from the complaint, and from the concessions made by appellant's counsel in oral argument, that appellant's crawfish traps were located in a group of reefs adjacent to the Florida Keys, and that the crawfish in this area move freely in and out of Florida's territorial waters, so that any taking of them would clearly have an effect upon the State's conservation efforts. Under these circumstances, we think it apparent that the State has an interest sufficient to enable it to subject appellant, one of its own citizens, to the conservation regulations which it sought to enforce here.

One further point requires discussion. As we read it, Skiriotes clearly holds that a state, given the requisite interest in a particular subject, may subject its citizens to extra-territorial regulation in order to protect that interest. It does not, however, explicitly hold that the state's officers may make arrests outside its boundaries in their efforts to effectuate such extra-territorial regulation. In his complaint, appellant has arguably, if inartfully, alleged that at least one of the arrests to which he was subjected took place beyond Florida's three mile seaward boundary.[3] We must, therefore, consider the effect of such an allegation.

■ Obviously, no state is at liberty to abridge the rights of persons not subject to its jurisdiction by indiscriminate arrests effected beyond its territorial limits, under the guise of attempted exercise of the extra-territorial regulatory powers which it enjoys under the rule of *Skiriotes.* Here, however, as in *Skiriotes,* the question is solely between appellant and his own state. The arrests to which appellant alleges he was sub-

---

3. Among the numerous imprecise allegations of appellant's complaint pertaining to arrests is the following, to which, with a measure of tolerance, we ascribe the meaning adverted to above:

"That on or about July 28, 1963, the plaintiff PERRY LEE FELTON, was arrested by one THOMAS F. COYMAN, for the alleged offense of setting crawfish traps in closed season. At the time of said arrest, the said THOMAS F. COYMAN was an agent of the defendants who were acting under color of authority of State law. *That said arrest was effected more than three miles off the shore of lower Matecumbe Key, which is more than three geographic miles from the low water mark along the southeast coast of the State of Florida.*" (Emphasis added.)

jected were an integral part of the efforts of the State of Florida to regulate the conduct of one of its own citizens in a matter in which the State clearly had a legitimate interest. In our opinion, the added fact that one or more of these arrests may have taken place a few miles outside Florida's three mile seaward boundary line cannot transmute the otherwise proper efforts of these State officials into a violation of appellant's constitutional rights.

As we have noted, the predicate of appellant's complaint is simply that the State of Florida had no jurisdiction over his activities because his crawfish traps were set beyond the State's seaward boundary. This, in the light of *Skiriotes*, is untenable; and without that predicate, appellant's complaint fails, for its allegations demonstrate no deprivation of any right secured to him by the Constitution.

The judgment is affirmed.