THE ATTORNEY GENERAL
OF TEXAS



CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 9, 1967

Hon. J. R. Singleton
Executive Director
Texas Parks & Wildlife Dept.
Austin, Texas

Opinion No. M-87

Re: What is the seaward
boundary of Texas and
whether Texas can uni-
laterally extend its gulf-
ward boundaries; and, if
so, how far can such
boundaries be extended,
and related questions.

Dear Mr. Singleton:

You have recently requested the opinion of this Office
concerning the extent of your authority to regulate fishing in
the waters of the Gulf of Mexico off the coast of Texas. You
cited Chapter 286, Acts of the 47th Legislature, page 454
(enacted in 1941 and codified as Article 5415a, Vernon's Civil
Statutes), which fixed the gulfward boundary of Texas at 27
marine leagues from the coast. This Article was amended in
1947 so as to extend the boundary of Texas seaward to the outer-
most limits of the Continental Shelf (Acts 1947, 50th Leg., p.
451, ch. 253).

Mention is also made of Public Law 89-658, passed by
the 89th Congress of the United States in 1966, codified as
Sections 1091-1094, Title 16, United States Code. This legis-
lation establishes a fisheries zone off the coast of the United
States, the limit of such zone being 12 nautical miles into the
sea from the coast.

You state that you are presently exercising control and
regulation of fishing in coastal waters extending from the shore
to a line 3 marine leagues into the Gulf of Mexico and you won-
der, in view of the above cited statutes, whether you should
attempt to exercise jurisdiction over fishing out to the 12
nautical mile line as set by the federal Fisheries Zone Act or
to the boundary as set by Article 5415a. Your specific questions
are as follows:

> (1) Can Texas unilaterally extend its gulfward
> boundaries; and, if so, how far can such
> boundaries be extended?

-393-

(2) Do present applicable fishing regulations of Texas apply to the twelve (12) mile fisheries zone created by PL 89-658. If not, to what portion of the twelve (12) mile zone do they apply?

(3) Do present applicable fishing regulations apply to an area contiguous to the Texas shore extending out twenty-seven (27) marine miles or to the edge of the continental shelf?

To answer these questions, it is necessary to consider the history of the ownership of the submerged lands off the coast of Texas. In 1950, the Supreme Court of the United States, In United States v. Texas, 339 U.S. 707, 340 U.S. 900, held that the United States possessed paramount rights in all submerged lands off the coast of Texas seaward of the low-water mark. In 1953 the Congress of the United States passed the Submerged Lands Act, 67 Statutes 29, codified as Sections 1301-1315, Title 43, United States Code. This enactment relinquished the title of the United States in the submerged lands off the shores of the coastal states to the states. The seaward extent was set at 3 geographic miles distant from the coast line, or such additional distance as its seaward boundary existed from its coast at the time a state became a member of the United States; with a limit of three miles in the Atlantic and Pacific Oceans and three leagues in the Gulf of Mexico. The record in the Congress made it clear that the Texas boundary at all times since 1836 existed at three marine leagues in the Gulf of Mexico.

The gulfward boundary of Texas subsequently was confirmed at 3 marine leagues from the coast. United States v. Louisiana, et al., 363 U.S. 1 (1960).

It should be observed that the Submerged Lands Act relinquished to the states all right, title and interest to the lands beneath the coastal waters and to "natural resources" in the area in question. See Section 1311 of Title 43, U.S.C.; Section 1311 also declares that it is the intent of Congress to leave the management, administration, development and use of the "natural resources" to the states.

The term "natural resources" was defined in Section 1301 as follows:

"(e) The term 'natural resources' in-
cludes, without limiting the generality thereof,
oil, gas and all other minerals, and fish,
shrimp, oysters, clams, crabs, lobsters, sponges,
kelp, and other marine animal and plant life but
does not include water power, or the use of water
for the production of power."

Accordingly, it would seem clear that the State of
Texas now has ownership of the natural resources including
marine life within the area ceded by the Submerged Lands Act.
Furthermore, at the time of the passage of such Act in 1953,
Texas was given the exclusive power to regulate the natural
resources in such area.

As noted above, the case of United States v. Louisiana,
et al., 363 U.S. 1 (1960), determined that Texas had ownership
of the submerged land and all attendant resources in an area
bounded by a line 3 marine leagues distant from Texas' coast.
Moreover , this case also decided the rights of the United
States in the submerged lands off the coast of Texas beyond
such 3 league line, and at page 84 of the opinion, the Court
defined the respective rights of Texas and the United States
as follows:

"As to the State of Texas, a decree will be
entered (1) declaring that the State is entitled,
as against the United States, to the lands, min-
erals, and other natural resources underlying the
Gulf of Mexico to a distance of three leagues from
Texas' coast, that is, from the line of ordinary
low-water mark and outer limit of inland waters;
(2) declaring that the United States is entitled,
as against Texas, to no interest therein; (3)
declaring that the United States is entitled, as
against Texas, to all such lands, minerals, and
resources lying beyond that area, and extending
to the edge of the Continental Shelf; (4) enjoining
the State from interfering with the rights of the
United States therein; and (5) directing Texas
appropriately to account to the United States for
all sums of money derived since June 5, 1950,
from the area to which the United States is de-
clared to be entitled."

This language will admit no other interpretation but that the United States, as against Texas, is entitled to all lands, minerals and resources lying gulfward beyond the 3 marine league line, and extending seaward to the edge of the Continental Shelf. The statutes of Texas, which are cited above and which purport to set the boundary of Texas at a greater distance gulfward than the 3 marine leagues from the coast are ineffective as a result of this decision. The gulfward boundary of Texas is a line extending 3 marine leagues from the coast, and no action of the Legislature or any official agency of Texas can extend this boundary any further into the Gulf of Mexico, without the approval of the United States.

Our analysis of United States v. Louisiana, et al. is consistent with the meaning read into this decision by the courts of Texas. Employers Mutual Casualty Company v. Samuels, 407 S.W.2d 839 (Tex.Civ.App. 1966, error ref., n.r.e.).

Furthermore, the above mentioned federal Fisheries Zone Act contains no provision enlarging a state's ownership of submerged lands and the attendant resources and no provision enlarging a state's power to regulate lands and resources within the fisheries zone. On the contrary, the Act specifically states that it shall not be "construed as extending the jurisdiction of the states to the natural resources beneath and in the waters within the fisheries zone established. . ."

The above discussion should answer most of the questions you have submitted to this office. Texas cannot unilaterally extend its gulfward boundaries by legislation. The fishing regulations promulgated by Texas apply only to the 3 marine league boundary, and not out to the 12 nautical mile line set by Public Law 89-658, or to the Continental Shelf line as provided in Article 5415a.

There still remains the question of whether Texas, while owning the submerged lands and resources in an area bounded by a line 3 marine leagues from the coast, can exclusively regulate, control and administer the resources found within such boundaries. The Submerged Lands Act stated that it was the policy of the United States Congress to permit the coastal states to control and regulate the development of the natural resources in the area ceded under the Act.

In Corsa v. Tawes, 149 F.Supp. 771 (D.C. Md. 1957), a three judge district court held that the regulation of coastal

fisheries in the territorial waters granted to the states by the Submerged Lands Act was within the police power of the individual states, absent any conflicting legislation by Congress imposing regulatory procedures under the Commerce Clause of the United States Constitution. The decision was affirmed by the Supreme Court of the United States, without discussion, at 355 U.S. 37 (1957).

There has been no federal legislation which purports to regulate the fishing industry within the 3 league line, and the only Act generally in point being the Fisheries Zone legislation referred to and discussed above. Section 4 of this statute provides in part that nothing in the Act shall be interpreted as "diminishing" the jurisdiction of the several states to administer "the natural resources beneath and in the fisheries zone". Therefore, this enactment seems to be confirming the policy of Congress expressed in the Submerged Lands Act that the states will be empowered to regulate and control resources within the boundaries confirmed, and in the case of Texas, three marine leagues gulfward. It is therefore concluded that Texas may presently exercise exclusive regulation of fishing from its shores to the three marine league line.

As to the State's right to regulate fishing outside the 3 league gulfward boundary, there are cases which hold that in the absence of conflicting Federal legislation the States may so regulate as to their citizens and for their protection and the protection of their adjacent natural resources. Skiriotes v. Florida, 313 U.S. 69 (1941) and cases cited therein. However, until the Legislature so provides, it is apparent that this is a hypothetical question. The long-established policy of this office is not to attempt to pass upon hypothetical questions. Obviously, the best procedure here would be for mutual agreements between the State and the Federal Government in the area gulfward of State boundaries. If this is not possible, then the Legislature may want to consider any action which would not conflict with Federal legislation, and in such event we will then be glad to pass upon the legal questions which may arise.

## S U M M A R Y

The gulfward boundary of the State of Texas
is a line three marine leagues distant from
the coast and in such waters Texas is
empowered to control and regulate fishing.
Texas cannot unilaterally extend its gulfward
boundary by legislation.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Lonny F. Zwiener
Assistant Attorney General

APPROVED:  OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Arthur Sandlin
Milton Richardson
Kerns Taylor
W. O. Schultz

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.