

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

September 12, 1973

The Honorable Clayton T. Garrison
Executive Director
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 101

Re:    Can the Texas Parks and
       Wildlife Department legally
       fund a project for the con-
       struction and maintenance
       of artificial reefs located
       in the Gulf of Mexico
       approximately thirty miles

Dear Mr. Garrison:                       from the Texas coastline?

Your letter requesting our opinion states that the Parks and Wildlife
Department is considering the construction of artificial reefs in the Gulf
of Mexico at a distance of approximately thirty miles from the coastline.
The project would entail the expenditure of State funds. You ask whether
the Department may "legally fund a project and maintenance" of such reefs.

In June of 1967 this office issued Opinion M-87 dealing with the
seaward boundary of Texas and the extent to which Texas could extend its
regulation of fishing. The conclusion reached was:

> "The gulfward boundary of the State of Texas
> is a line three marine leagues distant from the coast
> and in such waters Texas is empowered to control and
> regulate fishing. Texas cannot unilaterally extend its
> gulfward boundary by legislation."

As to whether Texas could regulate fishing outside the three league
gulfward boundary the opinion cited Skiriotes v. Florida. 313 U.S. 69
(1941) but declined to answer the question. Nothing has occurred since that
time to alter the effect of that opinion insofar as it expressed the extent to
which the State of Texas has regulatory jurisdiction. In United States v.

Louisiana, 394 U.S. 1 (1969), the "coastline" from which jurisdiction extends three leagues was defined.

The Submerged Lands Act (43 U.S.C. §1332) reserves to the United States jurisdiction, control and the power of disposition over the subsoil and seabed of the outer continental shelf. This is so even though §1333 extends state law to this area for certain purposes. Guess v. Read, 290 F. 2d 622 (5th cir., 1961).

Therefore, it is our opinion that, insofar as it is proposed to construct or maintain artificial reefs more than three marine leagues from the coast of Texas but within the outer seaward limit of the continental shelf, the reefs would be in waters over which the United States Government has asserted its jurisdiction. You have not asked us to, and we have not reviewed the appropriate federal statutes, regulations, and decisions which might bar or limit such construction in the absence of agreement by the U.S. Therefore, we express no opinion on the right of Texas to build such structures in the absence of agreement with the U.S.

Assuming no federal obstacle to the construction of such reefs, and that their construction and maintenance would aid in the propagation, distribution, management or protection of fish in Texas waters, we think §6 of Article 4032b-1, V.T.C.S., authorizes appropriation of Special Game and Fish Fund moneys (Article 4386b, V.T.C.S.) for such a project. That section reads in part:

> "Sec. 6. All moneys received . . . shall be remitted to the Game and Fish Commission [now Parks and Wildlife Commission] . . . and be deposited . . . to the credit of the Special Game and Fish Fund, and shall be used for the propagation, distribution, management and protection of fish in all salt waters and all fresh waters within this State . . . ." (emphasis added)

The expenditure of State money outside the State in order to protect proper interests inside of it is not prohibited. Compare Attorney General

Opinion M-1053 (1972). But Special Game and Fish Fund money, like other State money, is subject to the requirements of Article 8 § 6 of the Texas Constitution that:

> "No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law. . . ."

In Attorney General Opinion V-412 (1947) it was said, with reference to Article 8 § 6:

> "This constitutional provisions is not limited to funds paid into the General Fund, and applies to funds dedicated to a special purpose. Opinion O-700, dated May 5, 1939. Such constitutional provision controls all appro- priations out of the State Treasury and money not appropriated by the Legislature cannot be withdrawn from the Treasury. . . ."

We are unable to find any appropriation of money from the Special Fish & Game Fund (or from any other source) for such a use in House Bill 139, 63rd Leg., the Appropriation Act for the 1974 and 1975 fiscal years or in Senate Bill 1, 62nd Leg., 3rd Called Session, the 1973 act. In the absence of such an appropriation, the funds cannot be used for such a purpose. Compare Attorney General Opinions M-1084 (1972), M-574 (1970).

Therefore, in answer to your question as to whether your Department may legally fund and maintain the off-shore reefs, we would advise that we do not pass on the question concerning a possible conflict with Federal law, but that, in any event, a legislative appropriation must follow a favorable resolution of that facet of the problem before such an artificial reef may be constructed.

## SUMMARY

The submerged lands of the continental shelf, seaward of the three marine league extent of Texas

land, is subject to the jurisdiction of the Federal Government and, subject to there being no conflict with Federal law, the State of Texas may fund and erect artificial reefs in that area with funds from the Special Game and Fish Fund, provided the Legislature enacts an appropriation for that purpose.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee