Opinion
VASEY, J.
In cases consolidated for trial, the defendants were charged with violations of section 8603 of the Fish and Game Code of this state.[1] The parties stipulated to the facts. There is thus no dispute relating to the following facts:
“1. The defendants are citizens of the State of California.
“2. On March 19, 1970, each of the defendants engaged in the activity of fishing with purse seine nets at a location within California Fish and Game District 19 a, as defined in California Fish and Game section 11028.
“3. The acts of fishing with purse seine nets occurred at a point which was at a location more than three miles seaward of any point of land and landward of a line drawn between the headlands of Santa Monica Bay.
“4. The acts of fishing with purse seine nets occurred at a location outside and seaward of the Territorial Sea of the United States and within and landward of a line, each point of which is nine miles seaward of the seaward boundary of the Territorial Sea.”
The defendants made motions to dismiss, urging that section 8603 is unconstitutional and void, that it applies only within the state and that the acts here involved were done outside the state, and that as applied to the “alleged activities of the defendants is preempted by federal law.”
The court granted the motion to dismiss and the People appeal. No point is made as to compliance with Penal Code section 1385 dealing with dismissal of criminal cases and requiring: “The reasons of the dismissal must be set forth in an order entered upon the minutes.” The minute order reads: “Cause heretofore submitted to the court on 5-20-70 for decision, the Court now orders that the complaints against the defendants herein are dismissed. Memorandum Opinion and Judgment by the court filed.”
The court then filed a four-page opinion setting forth in detail its rea *Supp. 9 sons. (See Appendix A.) This opinion serves better than any entry in the minutes to advise all persons of the court’s reasons. It is referred to in the minutes. The point is not raised by either party and, for the purpose of this case, we treat it as a compliance with the code section.
The People urge as grounds of appeal that the acts of the defendants were done in Santa Monica Bay and were done within the State of California. They also argue that, regardless of the territorial limits of the state, California may regulate the conduct of its citizens in Santa Monica Bay and that it has elected to do so.
The defendants argue that Santa Monica Bay beyond three miles from the shore is outside the state boundaries and that the state may not regulate the fishing activities of its citizens beyond three miles from the shore and has not shown an intention to do so.
The trial court decided each question against the People. In this we believe the court erred, and we reverse its orders of dismissal on both grounds.
The boundaries of the State of California are set forth both in our Constitution and in the Government Code.
Section 1 of article XXI of the Constitution reads in part: “. . . thence down the middle channel of said river[2] to the boundary line between the United States and Mexico, as established by the treaty of May 30, 1848; thence running west and along said boundary line to the Pacific Ocean, and extending therein three English miles; thence running in a northwesterly direction and following the direction of the Pacific Coast to the forty-second degree of north latitude; .... Also, including all the islands, harbors, and bays along and adjacent to the coast.”
Section 170 of the Government Code reads: “To give greater precision to the boundary of the State of California as defined in Article XXI of the Constitution, it is hereby declared that the part of the boundary which is described as ‘running in a northwesterly direction and following the direction of the Pacific Coast to the forty-second degree of north latitude,’ and as ‘including all the islands, harbors, and bays along and adjacent to the coast,’ runs and has in the past run three English nautical miles oceanward of lines drawn along the outer sides of the outermost of the islands, reefs and rocks along and adjacent to the mainland and across intervening waters; and where there are harbors, but no such outlying islands, reefs and rocks, it runs and in the past has run three English nautical miles oceanward of lines drawn in front of the harbors along *Supp. 10 the outermost works and installations thereof, and, in the case of all bays (including inlets and estuaries) three English nautical miles from lines drawn from headland to headland across the mouth of each bay, inlet and estuary, regardless of the length of the lines.
“Where there are no outlying islands, reefs or rocks and no harbors or bays or inlets or estuaries, the boundary runs and has in the past run three English nautical miles oceanward of the lowest low water mark on the shore.”
In some cases, such as United States v. California (1965) 381 U.S. 139 [14 L.Ed.2d 296, 85 S.Ct. 1401], attention is called to the fact that the seaward line of some county boundaries is described differently than the State’s boundaries. This is not true of Los Angeles County, wherein Santa Monica Bay is located. (Gov. Code, § 23119.)
With reference to Santa Monica Bay, the Supreme Court of California in an exhaustive opinion expressly held it to be within the boundaries of the state. (People v. Stralla (1939) 14 Cal.2d 617 [96 P.2d 941].) Similar holdings have been made as to Monterey Bay, Ocean Industries, Inc. v. Superior Court (1927) 200 Cal. 235 [252 P. 722] and with regard to San Pedro Bay, United States v. Carrillo (1935) 13 F.Supp. 121.
People v. Stralla would clearly determine the case unless it has been overruled by the second case entitled United States v. California (1965) 381 U.S. 139 [14 L.Ed.2d 296, 85 S.Ct. 1401], Although People v. Stralla is cited in that opinion, it is not expressly overruled. The question resolves itself down to whether it is overruled by implication.
This involves a determination of just what was decided by United States v. California, supra. The People urge that that case merely determines the boundaries of a grant of property, whereas the appellants urge that the case determines the boundaries of the state. While the language used is not as clear and definite as might be desired, it is our view that the position of the People is correct. The case does no more than determine the extent of the property involved in a grant of title by the Submerged Lands Act.
Both the second United States v. California, supra, and the first United States v. California (1947) 332 U.S. 19 [91 L.Ed 1889, 67 S.Ct. 1658] are vital to a determination of this question. That the first dealt with title and not with political boundaries is clear, especially from the order of October 27, 1947, 332 U.S. 804 [92 L.Ed. 382, 68 S.Ct. 20]. That order reads in part: “The United States . . . is . . . possessed of paramount *Supp. 11 rights in and full dominion and power over, the lands, minerals and other things underlying the Pacific Ocean lying seaward of the ordinary low water mark on the coast of California, and outside of the inland waters, extending seaward three nautical miles and bounded on the north and south, respectively, by the northern and southern boundaries of the State of California. The State of California has no title thereto, or property interest therein.” (Italics ours.)
In the second United States v. California, the sole question was the extent of the grant contained in the Submerged Lands Act. This act does not purport to define political boundaries either of this state or of the.United States. It is entitled, “An Act to confirm and establish the titles of the States to lands beneath navigable waters within State boundaries and to the natural resources within such lands and waters, to provide for the use and control of said lands and resources, and to confirm the jurisdiction and control of the United States over the natural resources of the seabed of the Continental Shelf seaward of State boundaries.” Clearly, this is not an appropriate title for an act purporting to alter the boundary of the State of California. In title II, section 3, subdivision (a), language of a grant is found reading:
“(a) It is hereby determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are hereby, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States or the persons who were on June 5, 1950, entitled thereto under the law of the respective States in which the land is located, the respective grantees, lessees, or successors in interest thereof.
“ (b) (1) The United States hereby releases and relinquishes unto said States and persons aforesaid, except as otherwise reserved herein, all right, title, and interest of the United States, if any it has, in and to all said lands, improvements and natural resources; . . .” (Italics ours.)
Further evidence that state boundaries are not defined or determined is found in section 4 and particularly in this sentence:
“Nothing in this section is to be construed as questioning or in any manner prejudicing the existence of any State’s seaward boundary beyond the three geographic miles if it was so provided by its constitution or laws *Supp. 12 prior to or at the time such State became a member of the Union, or if it has been heretofore approved by Congress.”
Furthermore, in section 2 (43 U.S.C. § 1301), it is provided: “(b) The term ‘boundaries’ includes the seaward boundaries of a State or its boundaries in the Gulf of Mexico or any of the Great Lakes as they existed at the time such State became a member of the Union, or as heretofore approved by the Congress, or as extended or confirmed pursuant to section 4 hereof but in no event shall the term ‘boundaries’ or the term ‘lands beneath navigable waters’ be interpreted as extending from the coast line more than three geographic miles into the Atlantic Ocean or the Pacific Ocean, or more than three marine leagues into the Gulf of Mexico;
“(c) The term ‘coast line’ means the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters; ...”
The issue before the court is clearly delineated in the first sentence reading:
“The present case requires us to determine the extent of submerged lands granted to the State of California by the Submerged Lands Act of 1953 and in particular to declare whether specified bodies of water on the California coast are ‘inland waters’ within the meaning of that Act.”
It is readily apparent that, in determining the extent of the grant of property by the United States to the various states, including this state, that a vital question was the extent of inland waters as applied to the various bays. Although the decision refers to Santa Monica Bay as such (see 381 U.S. 173 [14 L.Ed.2d 317]), it holds that the waters thereof do not constitute a bay within the use of that term as defined in the Submerged Lands Act and that, as a consequence, the land beneath the waters of Santa Monica Bay beyond a line drawn three miles from the line of ordinary low water following the curvature of the coast is not included in the grant.
That this determination relates to the grant and not to political boundaries is clearly stated, at least insofar as the boundary of the United States is concerned. The court said: “California argues, alternatively to its claim that ‘inland waters’ embraces all ocean areas lying within a State’s historic seaward boundaries, that if Congress intended ‘inland waters’ to be judicially defined in accordance with international usage, such definition should possess an ambulatory quality so as to encompass future changes in international law or practice. Thus, if 10 years from now the definitions of the Convention were amended, California would say that the extent of the Submerged Lands Act grant would automatically shift, at least if the effect of such amendment were to enlarge the extent of submerged lands available *Supp. 13 to the States. We reject this open-ended view of the Act for several reasons. Before today’s decision no one could say with assurance where lay the line of inland waters as contemplated by the Act; hence there could have been no tenable reliance on any particular line. After today that situation will have changed. Expectations will be established and reliance placed on the line we define. Allowing future shifts of international understanding respecting inland waters to alter the extent of the Submerged Lands Act grant would substantially under cut the definiteness of expectation which should attend it. Moreover, such a view might unduly inhibit the United States in the conduct of its foreign relations by making its ownership of submerged lands vis-a-vis the States continually dependent upon the position it takes with foreign nations. ‘Freezing’ the meaning of ‘inland waters’ in terms of the Convention definition largely avoid this, and also serves to fulfill the requirements of definiteness and stability which should attend any congressional grant of property rights belonging to the United States.”
If this language has any meaning, it must be that the limits of the grant of real estate found in the equivalent of a grant deed are distinct from and not to be confused with political boundaries. (34 Ops. Cal. Atty. Gen. 260, 263 (1959). See also Toomer v. Witsell (1947) 334 U.S. 385 [92 L.Ed. 1460, 68 S.Ct. 1156].)
We must assume that, had the court intended to alter the political boundaries of the State of California, it would have said so. We further assume that such a declaration in a suit wherein all that was involved was the interpretation of the language used in the grant would have been completely outside the issues and mere dictum. We return to the first sentence in the opinion which clearly defines the issue and which does not specify the boundaries of California as being at issue.
Again, we call attention to the fact that the court showed its familiarity with People v. Stralla, supra, by referring to it. This reference is found solely in a discussion of whether or not Santa Monica Bay is a “so-called ‘historic’ ” bay. The only reference to the case is the statement that it stands as “the only assertion of criminal jurisdiction of which we have been made aware.” The court did not, in any respect, criticize the opinion. It did not express any dissatisfaction with its well reasoned holding that Santa Monica Bay is included within the boundaries of the State of California. It is our opinion that the holding of People v. Stralla is yet good law, that it has not been overruled nor modified, and that the trial court erred in holding that the offenses here involved, although occurring within Fish and Game District 19A as defined in Fish and Game Code section 11028, occurred outside the boundaries of the State of California.
*Supp. 14 Entirely aside from all questions of state boundaries and assuming for a moment that the acts of defendants here took place outside state boundaries and on the high seas, the trial court was even so in error in dismissing the cases. (Skiriotes v. Florida (1941) 313 U.S. 69 [85 L.Ed. 1193, 61 S.Ct. 924]; Note (1941) 15 So.Cal.L.Rev. 93.) It was there held that the State of Florida could prosecute a citizen of Florida for a violation of its laws enacted for the protection of sponges even assuming the state’s contention the acts took place within its border was incorrect. When its actions do not conflict with federal legislation, the sovereign authority of the state over the conduct of its citizens upon the high seas is analogous to the sovereign authority of the United States over its citizens in like circumstances. The United States is not debarred by any rule of international law from governing the conduct of its own citizens upon the high seas. And a criminal statute dealing with acts that are directly injurious to the government and which are capable of perpetration without regard to a particular locality is to be construed as applicable to citizens of the United States even though it contains no express declaration to that effect.
Apparently both the People and the respondents interpret Skiriotes as requiring an expressed legislative intent that the legislation apply outside the territorial waters of the state. It is not capable of such interpretation. The court therein pointed out that the state legislation showed the contrary intent to limit it to the territorial waters of the state, but that this did not preclude its application outside such waters.
Thus, in Skiriotes, the statute of the state referred to the “Gulf of Mexico, or the Straits of Florida or other waters within the territorial limits of the State of Florida.” The court did not consider this language any obstacle to enforcement of the law on the high seas.
In our case, the area in question is within Fish and Game District 19A, which makes our case even stronger than Skiriotes. It is true that the district was established before the decision in United States v. California, supra, but this is of no importance for in Skiriotes, the court held the statute purporting to apply only to waters within state boundaries as applicable on the high seas. Here we have a clear legislative intent which was absent in Skiriotes. If the area in question is within the state as we believe it is, there is no question. If it is outside the state, the Legislature intended the state law to apply therein, and it would, even without such legislative intent, apply anyway.
Neither are we in accord with respondents in their view that the state enactment conflicts with an act of Congress, a claim stated to be based on 16 United States Code section 1094. This section is to be read with sec *Supp. 15 tions 1091-1093. Congress has established a fisheries zone contiguous to the territorial sea of the United States without any regulation therein. This presents far less basis for a claim of conflict that did Skiriotes, and the claim was dismissed therein. Further, this claim must ignore the language of section 1094 that nothing contained in sections 1091-1094 should be construed as diminishing the jurisdiction of the states as to resources beneath and in the waters of the territorial seas.
The order of dismissal in each case is reversed, and each case is remanded to the trial court for further proceedings not inconsistent herewith.
Whyte, P. J., and Wong, J., concurred.
Appendix A IN THE MUNICIPAL COURT OF THE SOUTH BAY JUDICIAL DISTRICT COUNTY OF LOS ANGELES, STATE OF CALIFORNIA THE PEOPLE OF THE STATE OF 1 CALIFORNIA Plaintiff, vs. FRANK FORETICH, TOM TRAMA, > MIKE TRAMA, JOHN J. CUOMO, TONY PILATO, and ROSARIO LAURO, Defendants. CONSOLIDATED CASE NOS. 104270 104271 104272 104273 104274 104275 MEMORANDUM OPINION AND JUDGMENT FACTS: As stipulated to by all the parties herein, the defendants, on March 19, 1970, were fishing by means of purse seine nets in the waters of the Pacific Ocean at a point more that three miles and less than nine miles seaward from the low water mark on the adjacent coast of California. Further, the aforementioned activity occurred shoreward of the headlands of Santa Monica Bay and within the boundaries of California Fish and Game District 19A as defined in California Fish and Game Code Section 11028. The complaints on file herein charge each of the defendants with a violation of Section 8603, Fish and Game Code. The defendants moved to dismiss the complaints herein on the ground that Section 8603 Fish and Game Code is unconstitutional as applied to the activities of the defendants as alleged. Memoranda of Points and Authorities were filed by the defendants and by the
*Supp. 16 People; a Supplemental Memorandum of Points and Authorities was filed by the defendants. The court has read and considered the pleadings herein, the stipulations of the parties and their memoranda of Points and Authorities and now renders its opinion and judgment. OPINION: A state may regulate the conduct of its citizens within its territory. A state may also regulate the conduct of its citizens even on the high seas, provided (a) it evinces an intent so to do and (b) the United States has not occupied the field sought to be regulated. Skiriotes v. Florida (1941) 313 U.S. 69 [85 L.Ed. 1193, 61 S.Ct. 924], Quare, has California, by adopting Sections 8603 and 11028 of its Fish and Game Code, evinced an intent to regulate the activities of its citizens on the high seas? California Constitution, Article 4 Section 20(a) gives the legislature power to divide the state into fish and game districts and to protect fish and game in those districts. Section 777 California Penal Code provides for punishment under the laws of California for public offenses committed within California, emphasis ours. Fish and Game Code Sections 8603 and 11028 were adopted before the decision was handed down in the case of United States v. California (1965) 381 U.S. 139 [14 L.Ed.2d 296, 85 S.Ct. 1401] and during the time when the waters of Santa Monica Bay were considered by law to be territorial waters. When these sections were enacted it seems beyond doubt that California did not thereby intend to regulate the conduct of its citizens beyond its own boundaries and outside its territorial waters. In 1965 in United States v. California, supra, the U.S. Supreme Court changed, or, if you will, clarified the law in this respect by holding that the boundaries of California extend only three miles seaward from the low-water mark on the coast of California in the area extending from Malibu Point to Rocky Point. From thence forward the waters between the headlands of Santa Monica Bay were no longer within the territorial waters of California except within said three-mile line. The People, in their memorandum, argue that United States v. California made a distinction between “political jurisdiction” and “ownership” of submerged lands and territorial waters. But the decision clearly states that the case was the culmination of a suit begun in 1945 to determine “dominion” over the territorial sea and the lands beneath it. The 1947 decision of the court held that the United States was possessed of “full dominion and power” over the ocean outside of the inland waters extending seaward three miles. All the court in United States v. California sought to do was to determine what the term “inland waters” meant. The court adopted the twenty-four mile closing rule under which rule the waters of Santa Monica Bay are not inland waters except within three miles of the low water mark on the shore. The decision nowhere distinguishes between “political jurisdiction” or “ownership”. It refers to “dominion" of the United States. Webster’s New World Dictionary, college edition, defines “dominion” as rule or power to rule, sovereignty, severeign authority. We conclude, therefore, that, although California, when it adopted Sections 8603 and 11028, intended only to regulate conduct within its borders. The California Department of Fish and Game, by virtue of those sections, now attempts to regulate conduct on the high seas. The history of this legislation evinces an intent by the legislature to regulate conduct inside of California’s boundaries only. However, assuming, for the sake of argument, that California has by enacting these laws evinced an intent to regulate conduct on the high seas, has the United States occupied the field of regulation of fisheries outside California’s territory? The Congress has adopted 16 USC § 1091 and 16 USC § 1094 by virtue of the terms of which the United States has declared its intent to exercise exclusive rights in the
*Supp. 17 fisheries zone extending nine nautical miles outside the three mile territorial sea. As a reading of those USC sections plainly shows and as the authority cited on page four lines nineteen et seq. of defendants Supplemental Memorandum filed herein indicates, the Congress has occupied the field of the regulation of fisheries in the area extending nine nautical miles seaward of the territorial sea. The acts herein complained of occurred in that area. It is our opinion, therefore, that Sections 11028 and 8603 of the Fish and Game Code of California as applied to activity complained of in the complaints on file herein are unconstitutional. JUDGEMENT: The complaints herein are dismissed. SO ORDERED, June 25, 1970 /S/ GEORGE R. PERKOVICH, JR. GEORGE R. PERKOVICH, JR., Judge South Bay Municipal Court

Section 8603 reads: “It is unlawful to use or operate or assist in using or operating any net, trap, line, spear, or appliance, other than in connection with angling, in taking fish, except as provided in this chapter or Chapter 4 of this part.”

Reference is to the Colorado River mentioned earlier in the description.