*Supp. 48 Opinion
COLE, P. J.
Section 51 of Los Angeles County Ordinance No. 9767 as amended by ordinance No. 11, 175 states that “[n]o person shall appear, bathe, sunbathe, walk, change clothes, disrobe or be on any beach in such a manner [as to reveal specified portions of the anatomy] . . .” (italics added).
While standing ankle deep in the surf on Point Dume State Beach, appellant disrobed in the presence of others, including sheriff’s officers. The principal issue on this appeal is whether the ordinance referred to above (the “beach ordinance”) applies to the location where appellant was standing.[1]
The word beach as used in section 51 is a term of art. Section 3 of the beach ordinance defines beach to mean “a public beach or shoreline area bordering the Pacific Ocean, owned, managed or controlled by the County, in incorporated or unincorporated territory.” The criminal penalties imposed are prescribed by section 26 to apply to unincorporated territory of the County of Los Angeles. We take judicial notice that Point Dume State Beach is in unincorporated territory of the County of Los Angeles.
As phrased by appellant, the sole issue in this connection “is whether or not the alleged violation occurred on property owned, managed or controlled by the County of Los Angeles.” Fastening on the definition of “beach” set forth above, appellant argues that the area described by that definition “is not coextensive with the boundaries of the County.” We understand appellant’s position to be that while the county possessed the police power to apply the ordinance to the area of seashore where appellant took off her clothes, section 3 establishes that it did not exercise that full power. We reject that argument.
Appellant first points out a fact not contested by the People—the County of Los Angeles does not own Point Dume State Beach. The State Parks Commission has entered into an operational agreement for Point Dume State Beach whereby the County of Los Angeles assumes certain responsibilities. With respect thereto, the thrust of appellant’s argument is that in terms of various recorded deeds which gave the State of California ownership of beach properties within Point Dume State *Supp. 49 Beach, the shoreline boundary of the lands conveyed was the mean high-tide line. These lands were conveyed to the State Parks Commission and that body entered into a separate agreement with the County of Los Angeles. Appellant urges that the parks commission’s jurisdiction stopped with the mean high-tide line and that everything seaward of that line was owned by the State of California as tidelands and submerged lands, which are within the jurisdiction of the State Lands Commission (Pub. Resources Code, § 6301). Appellant’s argument overlooks the fact “that the limits of [a] grant of real estate found in the equivalent of a grant deed are distinct from and not to be confused with political boundaries.” (People v. Foretich (1970) 14 Cal.App.3d Supp. 6, 13 [96 Cal.Rptr. 481].)
It is the essence of appellant’s position that “managed or controlled,” as used in section 3, can only relate to lands where by affirmative contract or other agreement the county assumes operational responsibilities. We do not think this follows at all. “The sovereignty and jurisdiction of the State extends to all places within the boundaries as established by the Constitution.” (Gov. Code, § 110.) The entirety of Point Dume State Beach is within the geographical boundaries of California. Constitution, article III, section 2: “The boundaries of the state are those stated in the Constitution of 1849 as modified pursuant to statute.” The Constitution of 1849, article XI and Government Code section 170 make it clear that the boundaries of the state extend seaward three English nautical miles. The seaward boundaries of the State of California and the County of Los Angeles are coextensive. (People v. Foretich (1970) 14 Cal.App.3d Supp. 6, 10 [92 Cal.Rptr. 481].) Pursuant to Constitution, article XI, section 7, “[a] county or city may make and enforce within its limits all local, police, sanitaiy, and other ordinances and regulations not in conflict with general laws.”
Under this provision police power is vested in eveiy county by direct Constitutional grant. “The power thus conferred is as broad as that vested in the legislature itself. . .” subject only to being of local nature and subordinate to general laws. Accordingly, a board of supervisors is “vested with the right to exercise within its jurisdiction ‘the entire police power of the state, subject only to the control of the general laws’ (In re Isch (1917) 174 Cal. 180, [181-182] . . .).” (People v. Velarde (1920) 45 Cal.App. 520, 524 [188 P. 59].) A state has police jurisdiction over its territorial waters, which may be exercised for all proper purposes. (People v. Stralla (1939) 14 Cal.2d 617, 631 [96 P.2d 941]; Oil Workers etc., Union v. Superior Court (1951) 103 Cal.App.2d 512, 576 [230 P.2d 71].) Thus, the county has full police power in all areas within its *Supp. 50 territorial boundaries and that includes the surfline where appellant undressed. This is tantamount to control within the meaning of the ordinance.
Further, it is clear that the county undertakes many functions in the tidelands and submerged lands off" its coastline. The provision of lifeguard service is an example which comes to mind. This is another instance of “control.”
It appears to us that these factors lead logically to the conclusion that section 51 of the beach ordinance applies to the area where appellant committed her acts. To hold otherwise would lead to absurd results and defeat the legislative intent of allowing all persons to enjoy the beaches without the fear of “being unwilling spectators” to such conduct. (See resolution of board of supervisors, infra.)
Appellant also urges that the ordinance has been preempted by state law and is an invalid attempt to provide additional proscription of criminal sexual activity and controlled nudity. Appellant recognizes that in Eckl v. Davis (1975) 51 Cal.App.3d 831 [124 Cal.Rptr. 685] dealing with a Los Angeles City ordinance prohibiting nude bathing on the beaches, the same argument was rejected. She emphasizes to us language appearing in that case (at p. 843) which reads “[ijt thus appears that the purpose of the ordinance is not to regulate sexually motivated conduct but, rather, to insure the peaceful and undistracted enjoyment of the parks and public beaches of the city by all persons who choose to come there.” Appellant urges that the county ordinance is different because one of the supervisors stated before voting for it that permissiveness on the beaches would lead to mischief on the side yards. The argument is that this shows that the ordinance was adopted to regulate sexually motivated conduct.
As described in the resolution submitted by the supervisor who introduced ordinance No. 11,175 “The parks and beaches of this county should be operated and maintained in such a manner as to encourage their use by as many persons as possible. A recent phenomenon has begun to occur wherein some persons constituting a minority appear in such places nude or partially nude with the private parts of their bodies exposed. Many other persons are offended thereby and stop using the parks and beaches in the county. The conduct of this minority has caused the registering of complaints and inquiries with lifeguards, law enforcement agencies and other county officials. The City of Los Angeles was recently faced with similar problems which they sought to remedy by an *Supp. 51 ordinance prohibiting nude sunbathing. The recent consolidation of City and County beaches leaves the question of the permissiveness of such nude sunbathing in doubt. Because of the current ideal recreation weather and the school recesses for summer vacation, it is immediately and urgently necessary to preserve all of the parks and beaches of the county as places where all persons can go to improve their health and general well-being without fear of becoming unwilling spectators to such conduct. For these reasons an ordinance prohibiting such conduct is urgently required.” We believe the quotation from the motion which introduced the ordinance which we have set forth above establishes the legislative intent of the supervisor. Eckl v. Davis controls us.
The judgment is affirmed.
Alarcon, J., and Wenke, J., concurred.

 It is implicit in appellant’s argument that the surfline area where she disrobed is below the mean high-tide line. We assume that to be the case.