STATE

v.

David L. STERLING.

No. 81–304–M.P.

Supreme Court of Rhode Island.

July 30, 1982.

Reargument Denied Sept. 9, 1982.

Charles E. Di Leva, Legal Counsel, Dept. of Environmental Management, for petitioner.

Nardone, Turo & Naccarato, Vincent J. Naccarato, Nancy O. Dodge, Westerly, for respondent.

## OPINION

### BEVILACQUA, Chief Justice.

This case is before us on a petition for a writ of certiorari filed by the State of Rhode Island Department of Environmental Management from a judgment of the District Court granting a motion to dismiss two complaints charging the defendant, David L. Sterling, with violating G.L. 1956 (1968 Reenactment) § 20–7–1.[1] That statute created the Rhode Island Marine Fisheries Council (MFC) and authorized the MFC to promulgate regulations governing the following activities only:

"(1) The manner of taking fish and shellfish

(2) The legal size limits of fish and shellfish to be taken

(3) The season and hours during which fish and shellfish may be taken

(4) The numbers or quantities of fish and shellfish which may be taken

(5) The opening and closing of areas within the coastal waters to the taking of any and all types of fish."[2]

Pursuant to this directive, the MFC adopted a regulation establishing a maximum amount of yellowtail flounder that could be landed at Rhode Island ports or possessed in Rhode Island territorial waters without regard to the area of capture.[3] Subsequent to the effective date of the regulation, state conservation officers twice apprehended defendant in Rhode Island waters and determined that he was in possession of an amount of yellowtail flounder in excess of the limit established by the regulation. On both occasions defendant had caught the fish outside Rhode Island territorial waters. The overage was seized and sold for the benefit of the state, and the instant charges were brought against defendant. The District Court justice granted defendant's motion to dismiss on the ground that the MFC regulation was an invalid exercise of administrative power. We agree.

The regulation in question imposes a landing-possession limit per boat trip of yellowtail flounder regardless of whether or not the area of capture was within Rhode Island territorial waters. The regulation therefore purports to govern conduct outside Rhode Island's territorial limits. Although a state may regulate the conduct of its citizens outside its boundaries in matters affecting the state's legitimate interests, it

---

1. For the former version of G.L. 1956 (1968 Reenactment) § 20–7–1, see the note to chapter 20–4 (1981 Cum.Supp.).

2. In P.L. 1981, ch. 197, which was entitled "An Act Recodifying Title 20 of the General Laws of Rhode Island," the Legislature amended the language in § 20–7–1 delineating the jurisdiction granted to the MFC. Section 20–3–2, the amended version of § 20–7–1, provides:

   "The marine fisheries council shall have regulatory jurisdiction over all marine animal species within the jurisdictional territory of the state. The council is authorized, after the holding of a public hearing to promulgate and adopt rules and regulations governing the following activities only, within the areas of its jurisdiction:

   (a) The manner of taking fish, lobsters and shellfish.

   (b) The legal size limits of fish, lobsters and shellfish to be taken or possessed.

   (c) The seasons and hours during which fish, lobsters and shellfish may be taken or possessed.

   (d) The numbers or quantities of fish, lobsters and shellfish which may be taken or possessed.

   (e) The opening and closing of areas within the coastal waters to the taking of any and all types of fish, lobsters and shellfish."

   The act was approved on May 18, 1981, and became effective on January 1, 1982, subsequent to the date of the alleged offenses.

3. The regulation provided that "it shall be unlawful for any vessel to land at a R.I. port or possess in R.I. territorial waters, in excess of 3,000 lbs. of yellowtail flounder, or the combined total of the legal limit from Massachusetts waters, plus one legal limit from one zone in the FCZ (east of 69° longitude or west of 69° longitude), whichever is greater." Management Policies for the Cod, Haddock and Yellowtail Flounder Fisheries within the Territorial Waters of the State of Rhode Island 20 (Dec. 18, 1979).

can do so only if no conflict with federal law is presented. *Skiriotes v. Florida*, 313 U.S. 69, 77, 61 S.Ct. 924, 929, 85 L.Ed. 1193, 1200 (1941). Thus, the issue before this court is whether Rhode Island has a legitimate interest in regulating the taking of yellowtail flounder outside its waters and, if so, whether the means adopted by the state to regulate this conduct conflicts with federal law.

The Supreme Court has recognized that a state's interest in preserving nearby fisheries is sufficiently strong to permit extraterritorial enforcement of its laws enacted for that purpose. *United States v. Alaska*, 422 U.S. 184, 198–99, 95 S.Ct. 2240, 2251, 45 L.Ed.2d 109, 121 (1975). We therefore believe that Rhode Island's interest in preventing the depletion of the nearby yellowtail flounder population is sufficiently strong to justify extraterritorial enforcement of a regulation consistent with applicable federal laws. Upon examining the history of federal fishing legislation and the regulations promulgated thereunder, we find, however, that the Rhode Island regulation conflicts with federal policies governing yellowtail flounder and is therefore invalid.

Two months before Rhode Island enacted the legislation enabling the MFC to adopt its regulations, Congress enacted the Fishing, Conservation Management Act (FCMA) of 1976, 16 U.S.C.A. §§ 1801—1882 (1976). The FCMA created a Fishery Conservation Zone (FCZ), which extends from the seaward boundary of the coastal states to a distance of 200 nautical miles. *Id.* § 1811. The act mandates that the federal government shall exercise exclusive fishery-management authority over all specifies of fish within the zone. *Id.* § 1812. That authority is exercised by regional fisheries management councils, which, under the FMCA, can recommend comprehensive plans and regulations to the Secretary of Commerce for enactment. *Id.* §§ 1853–1855. The coastal states retain jurisdiction over fishing within their boundaries but may not "directly or indirectly" regulate any fishing conducted outside those boundaries, unless the vessel in question is registered under their laws. *Id.* § 1856(a).

By enacting the FCMA, Congress has preempted state regulation of commercial fishing in the area between the states' boundaries and 200 miles seaward when federal regulations governing such fishing have been promulgated. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–31, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). If no federal regulations regarding a certain species of fish apply, a state may regulate fishing of that species by its citizens beyond its boundaries when a legitimate state interest is served by the regulation. *See People v. Weeren*, 26 Cal.3d 654, 607 P.2d 1279, 163 Cal.Rptr. 255 (1980). At the time the alleged offenses occurred, however, federal regulations governing the fishing of yellowtail flounder in the FCZ were in effect. Rhode Island, therefore, had no authority to regulate directly or indirectly fishing of this species outside its boundaries in a manner inconsistent with the federal regulations.

Although the state contends that the MFC regulation does not present a conflict with federal yellowtail flounder policies, it is apparent that such a conflict does exist. The MFC regulation sets a possession-landing limit composed of the combined total of the landing limit in Massachusetts waters and the largest allowable catch of the two management units in the FCZ without regard to the area of capture. Thus, a Rhode Island fisherman, who could legally take an amount of yellowtail flounder which exceeds the Massachusetts limit by fishing in Connecticut, which has no limit, is precluded under the MFC regulation from taking the largest allowable catch in the FCZ. The regulation is therefore without effect, and the charges brought against the defendant pursuant to that regulation were properly dismissed.

The petition for certiorari is denied, the writ heretofore issued is quashed, and the case is remanded to the District Court with our decision endorsed thereon.