**SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., Plaintiffs,**

v.

**Robert MARTINEZ, etc., et al., Defendants.**

**No. 90–10071–CIV.**

United States District Court, S.D. Florida.

Aug. 2, 1991.

David Paul Horan & Associates, P.A., Key West, Fla., for plaintiffs.

Jonathan A. Glogau, Atty. Gen. Office, Sp. Projects Div., Tallahassee, Fla., for defendants.

## FINAL ORDER AND OPINION

JAMES LAWRENCE KING, Chief Judge.

This matter is before the court upon the defendants' objections to the report and recommendation of Magistrate Judge Turnoff. The plaintiffs have filed a timely objection to the report and findings of fact by the magistrate. The court therefore has the obligation to make a *de novo* review of the record with respect to those factual issues. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). As the use of the phrase *de novo* implies, the court's consideration of the factual issues must be independent and based upon the record before the court. *See Loconte v. Dugger,* 847 F.2d 745, 750 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). The court has conducted a *de novo* review of the findings of fact made by the magistrate and critical to the legal standards in the case.

## FACTUAL BACKGROUND

During the morning of December 18, 1990, the State of Florida arrested Captain

Glen Black, a Florida resident and commercial fisherman, for violating Chapter 46–23 Fla.Admin.Code.[1] Chapter 46–23 is a Florida landing law concerning the harvesting of Spanish Mackerel outside the state's territorial waters. Captain Black used his boats to catch over 10,000 pounds of Spanish Mackerel in federal waters of the Gulf of Mexico. The fish were caught pursuant to a federal permit.

Plaintiffs commenced this action seeking declaratory and injunctive relief against state officials in charge of enforcing and placing into effect Chapter 46–23, Fla.Admin.Code. As it now stands, both Florida and the federal government have enacted statutes and regulations to regulate fishing in the region.

Some time ago, Congress enacted the Magnuson Fishery Conservation and Management Act (Magnuson Act), 16 U.S.C. § 1801 et seq. (1976). The Magnuson Act established an Exclusive Economic Zone (EEZ) (formerly known as the Fishing Conservation Zone) in the waters off the United States coastline. The EEZ runs from the outer limits of state territorial waters to 200 nautical miles seaward. Id. § 1811. All fish except highly migratory species are subject to the exclusive fishery management authority of the United States.

In addition, the Magnuson Act establishes eight regional fishery management councils and provides that management of fishery resources within each region shall be conducted pursuant to fishery management plans prepared by each council or councils for each species of stock of fish within its region. Id. § 1852. States continue to regulate fishing out to the seaward limit of state territorial waters. The Magnuson Act does provide, however, that the states cannot regulate, directly or indirectly, any fishing vessel outside their respective territorial borders, "unless the vessel is registered under the law of that state." 16 U.S.C. § 1856(a)(3).

The responsibility for developing fishery management plans for Spanish Mackerel are vested in the Gulf of Mexico and Atlantic Fishery Management Councils. The Coastal Migratory Pelagic Resources Fishery Management Plan was developed by joint effort of the Gulf and Atlantic Councils. This particular plan specifically sets an annual quota for total catch of Spanish Mackerel. The quota covers a wide range of territory. Notably, the majority of Spanish Mackerel are taken in federal waters off the coast of Florida. The Florida

---

1. On November 1, 1989, Florida revised its landing limits to govern landings of fish caught in all waters.

46.23.004 Commercial Fishing Season for Spanish Mackerel; Commercial Vessel Limits.
(1) East Coast
 (a) East Coast Waters Defined * * *
 (b) Persons harvesting Spanish Mackerel for commercial purposes from waters of the east coast shall have a season that begins on the regional opening date of April 1 of each year and continues through March 31 of the following year. These persons shall be subject to commercial vessel limits effective during segments of the season as follows:
 (1) A limit of 1,500 pounds per vessel per day shall apply from April 1 through November 30 of each year and also from the date unlimited harvest ends pursuant to subparagraph 2, until the date the total regional commercial harvest is projected to reach 2,600,000 pounds. During the 1500 pound season segments, no person shall land from a single vessel in any one day within this region more than 1,500 pounds of Spanish Mackerel. The term Land for purposes of this subparagraph and subparagraph 3 means the physical act of bringing the harvested fish ashore.
 (2) Unlimited harvest of Spanish Mackerel per vessel per day shall be allowed from December 1 of each year until the date the total regional commercial harvest is projected to · reach 2,340,000 pounds.
 (3) A limit of 500 pounds per vessel per day shall apply after the date the total regional commercial harvest is projected to reach 2,600,000 pounds and continue through the remainder of the season (March 31). During this season segment, no person shall land from a single vessel in any one day within this region more than 500 pounds of Spanish Mackerel.
 (4) Notwithstanding subparagraphs and 2, if at any time during the season, adjacent federal Exclusive Economic Zone (EEZ) waters are closed to commercial harvest of Spanish Mackerel, the commercial vessel limit and landing limit of 500 pounds per vessel per day specified in subparagraph 3 shall apply for the remainder of the season. Chapter 46–23.004, Fla.Admin.Code
Similar regulations were enacted for the East, Southwest, and Northwest coasts of Florida.

regulation limits a fishing vessel landing in Florida to a sliding scale of Spanish Mackerel pounds per trip. Chapter 46–23, is an attempt to regulate fishery management activities in the EEZ by placing bag limits on vessels registered and landing in Florida.

At this point it is important to mention that the idea of a permanent landing limit for Spanish Mackerel is not a new one. It appears that the Fishery Management Councils have considered the issue before. A review of the record reveals that the Councils proposed a permanent federal landing limit prior to the new Florida regulation.

### DISCUSSION

The plaintiffs advance several arguments in support of their position: (1) state regulations at issue are pre-empted by federal laws; (2) enforcement of Chapter 46–23 violates the Privileges and Immunities Clause of United States Constitution; (3) enforcement of Chapter 46–23 violates Equal Protection of the laws under the Fourteenth Amendment; and (4) enforcement of Chapter 46–23 constitutes an impermissible burden on interstate commerce.

The magistrate found Chapter 46–23 constitutional as applied and remained unpersuaded by any of the theories set forth by plaintiffs. The magistrate's report contains the following findings of fact: (a) the state regulation does not violate Equal Protection under the Fourteenth Amendment inasmuch as it applies equally to all persons within the state; (b) the plaintiffs failed to show an impermissible burden on interstate commerce; (c) there is no discrimination against non-residents in favor of residents; and (d) the Magunson Act and regulations promulgated thereunder do not pre-empt the state regulation in any way. The magistrate concluded that the applicable Florida regulations are consistent with the applicable federal scheme of regulations. The plaintiffs have filed strenuous objections to the magistrate's findings.

For three reasons the court must reject the magistrate's report and recommenda-tion. The defendants' application of Chapter 46–23, Fla.Admin.Code is unconstitutional as violative of Equal Protection, Commerce and Supremacy Clauses of the United States Constitution.

### EQUAL PROTECTION

 This court's opinion in *Bateman v. Gardner*, 716 F.Supp. 595 (S.D.Fla.1989), *aff'd*, 922 F.2d 847 (11th Cir.1990) determined that Florida Fisherman have protestable federal rights under the Magnuson Act. The deprivation of equal access to federal resources by the state of Florida created the constitutional conflict. As in *Bateman*, the net effect of the Florida legislation is discrimination against it own citizens, for only citizens of Florida are prohibited from the federal annual quota of Spanish Mackerel. As in *Bateman*, the Florida legislature has offered "no reason for discriminating against its own citizens in favor of out of state commercial fisherman." *Id.* at 597. The magistrate found that Florida has a legitimate interest in the proper maintenance of Spanish Mackerel, and that the statute applies equally to all persons within the jurisdiction of the state. Therefore, no discrimination exists. *Skiriotes v. Florida*, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941). After *Bateman*, however, states may no longer discriminate against its own citizens.

Under the state's interpretation of Chapter 46–23, commercial fishing vessels registered in other states and based in Florida may enter the EEZ, catch their federal limit and legally return to port. It is neither fair nor equitable to allow boats registered in other states to reap the benefits the Magnuson Act opens to them while Florida vessels face criminal charges for the same conduct.

Clearly, Florida may not now prohibit its citizens from engaging in the type of fishing that Congress and the Fishery Management Councils have allowed as not violating the Equal Protection Clause. The Florida regulation directly conflicts with important purposes of Magnuson Act, namely trying to prevent piecemeal extra-territorial state regulation and promoting uniformity

in the EEZ. Chapter 46–23 is therefore unconstitutional.

## COMMERCE CLAUSE

■ The Commerce Clause, Art. I § 8, gives Congress the authority to "regulate commerce ... among the several States." The court is of the opinion that Chapter 46–23, is an infringement of the commerce power vested in Congress. In the instant case, Congress, through Fishery Management Councils, has specifically chosen to allow a certain amount of Spanish Mackerel to be caught by commercial fisherman in the EEZ. This allocation applies and is permitted to citizens of all states.

The State of Florida by enacting Chapter 46–23 is attempting to regulate Mackerel fishing in exclusively federal waters.[2] "This so called landing law attempts indirectly to regulate fishing outside the state's boundary by prohibiting vessels making use of Florida ports from carrying legal cargos of fish." *See State v. Sterling,* 448 A.2d 785 (R.I.1982). The *Sterling* court struck down a similar Rhode Island landing law which prohibited possession of an amount of fish that could be legally taken in the EEZ.

Florida's application of Chapter 46–23, to out-of-state vessels would be an unauthorized interference with commerce between the states in violation of the Commerce Clause, especially when another principle purpose of the Magnuson Act is to promote the commercial fishing industry.

## SUPREMACY CLAUSE

■ The Supremacy Clause of the Constitution, Art. VI clause 2, mandates that federal statutes and federal regulations properly promulgated pursuant to proper statutory authority take precedence over state laws. *See, e.g., Hillsborough County, Florida v. Automated Medical Laboratories,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Preemption of state law by federal law can occur in several ways, including as a result of conflict between federal and state law. *Id.* at 713, 105 S.Ct. at 2375; *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Such a conflict will be found "when it is impossible to comply with both federal and state law, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or when the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

■ As it stands, Chapter 64–23, Fla.Admin.Code, conflicts with the federal Coastal Migratory Pelagic Resources Fisheries Management Plan as promulgated by the Gulf and Atlantic Councils. Under the federal plan,[3] plaintiffs may take up to 2.99 million pounds in the Gulf of Mexico and 3.14 million pounds in the Atlantic per year, while under the Florida regulation they may not. Moreover, as mentioned earlier, the Florida regulation inhibits a primary purpose behind the promulgation of the Magnuson Act, "to promote domestic commercial fishing." *Bateman,* 716 F.Supp. at 598. The Florida regulation stands as an obstacle to the accomplishment of this pur-

---

**2.** Title 16 U.S.C. § 1856(a) states in pertinent part:

Except as provided in subsection (b) of this section, nothing in this chapter shall be construed as extending or diminishing the jurisdiction or authority of any state within its boundaries. No state may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, unless such a vessel is registered under the laws of such a state.

**3.** 50 C.F.R. 642.21(c)

Pursuant to the Magnuson Act, the Gulf and South Atlantic Fishery Management Councils developed, and the Secretary of Commerce approved, the Coastal Migratory Pelagics Fishery Management Plan (FMP). The FMP provides for an annual quota for Spanish Mackerel caught in the EEZ. In the 1990–1991 season the Gulf quota was set at 2.99 million pounds with no landing limit. The Atlantic quota was slightly higher at 3.14 million pounds. The catch is taken off the coastal states from North Carolina to Texas.

The majority of Spanish Mackerel are taken in federal waters off the coast of Florida. The Florida regulation would reduce the allowable catch by almost 1,000,000 pounds annually.

pose by restricting commercial Mackerel fishing outside the states boundaries. "Under pre-emption principles this conflict must be resolved in favor of enforcement of federal law." *Bateman,* 716 F.Supp. at 598.

## CONCLUSION

The court concludes that outside of state territorial waters, it is the federal government which has the responsibility for management of fish stocks. The Fishery Management Councils may decide at some future date to adopt regulations concerning permanent federal landing limits. The adoption of such regulations by federal authority would achieve the stated federal purpose of preventing piece-meal management of federal resources. Accordingly, it is

ORDERED and ADJUDGED as follows

1. Chapter 46–23, Fla.Admin.Code violates the Equal Protection Clause of the United States Constitution insofar as it restricts Florida commercial fisherman from fishing in federal waters.

2. Chapter 46–23, Fla.Admin.Code, violates the Commerce Clause of the United States Constitution insofar as it interferes with the commerce between the states.

3. 50 C.F.R. Part 642.21(c) pre-empts Chapter 46–23 insofar as Chapter 46–23 limits commercial Mackerel fishing where the federal regulations allow it.

4. The defendants are permanently enjoined from enforcing Chapter 46–23, Fla.Admin.Code, in a manner that violates the Equal Protection Clause and Commerce Clause or conflicts with the applicable federal regulations.

DONE AND ORDERED.