VIETNAMESE FISHERMEN ASS'N OF AMERICA; Lam Tran; Nguyen Xa Van; Nguyen Meo Van; and Nguyen Hung Huy, Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF FISH AND GAME and Pete Bontadelli, both individually and in his capacity as Director of the California Department of Fish and Game, Defendants.

Committee to Ban Gill Nets; Dolphin Connection: Earth Island Institute; Doris J. Allen; and Leo T. Cronin, Intervenors.

No. C 91–0778 DLJ.

United States District Court, N.D. California.

Feb. 25, 1993.

Alan W. Sparer, and Anne E. Mudge, of Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA, Mary L. Hudson, Sole Practitioner, Oakland, CA, for plaintiffs.

John Dratz, Jr., California Deputy Atty. Gen., for defendants.

Lawrence E. Goldenhersh, and Jeremy J.F. Gray, of Ikell & Manella, Los Angeles, CA, for intervenors.

## ORDER

JENSEN, District Judge.

This case requires the Court to revisit issues of gill nets, rockfish, and preemption in deciding whether to permanently enjoin a particular aspect of California Proposition 132. On January 13, 1993, the Court heard plaintiffs' motion for summary judgment. Alan W. Sparer and Anne E. Mudge of Howard, Rice, Nemerovski, Canady, Robertson & Falk and Mary L. Hudson appeared for plaintiffs. California Deputy Attorney General John Dratz, Jr. appeared for defendants. Lawrence E. Goldenhersh and Jeremy J.F. Gray of Irell & Manella appeared for intervenors. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court GRANTS plaintiffs' motion for summary judgment.

## I. BACKGROUND

This is an action brought by plaintiff fishermen and a representative association, the Vietnamese Fishermen Association of America ("VFAA"), against defendants California Department of Fish and Game and Director Pete Bontadelli (collectively the "Department") to enjoin regulations forbidding the

use of gill or trammel nets to take rockfish in federal waters off the coast of California.[1]

On November 6, 1990, Proposition 132 was adopted by the people of California at a general election, amending the California Constitution. *See* Marine Resources Protection Act of 1990 ("MRPA" or "Proposition 132"), Cal. Const. art. XB. Proposition 132 seeks in part to preserve California's marine resources through the regulation and eventual banning of gill and trammel nets in California coastal waters. Such forms of fishing gear have been found to entangle sea lions, birds, porpoise, non-target fish, and other non-commercial marine life, causing injury and death to those unfortunate enough to be caught up in the nets.

At the time Proposition 132 was passed at the November 1990 election, an immediate prohibition on the use of gill and trammel nets to take rockfish in state waters from 0 to 3 miles offshore was imposed; meanwhile, use of such nets continued to be permitted in waters more than 3 miles offshore. However, as of March 1, 1991, defendants have sought to enforce this absolute ban in federal waters up to 200 miles offshore.

Plaintiffs represent a group of boat owners, pilots, and/or crewmen from the greater San Francisco and Monterey Bay areas, most of whom were refugees from South Vietnam, and who are presently either permanent resident aliens or U.S. citizens. Plaintiffs use special gill nets to take only rockfish, a specialty sold primarily to Asian American markets and restaurants. Members of the VFAA sell their rockfish catch solely for local consumption. As the Vietnamese fishing community of Northern California is the group principally associated with fishing for rockfish, any absolute ban on the use of gill nets will presumably impact this community most adversely. The individual plaintiffs have also submitted declarations stating that the only form of livelihood available to them is fishing, and the only means of catching rockfish for which they are trained is through the use of gill nets.

---

1. The background of the present case was fully set forth in the Court's prior Orders, *see Vietnamese Fisherman Ass'n of America v. California Dep't of Fish & Game*, Civ. No. C–91–0778–DLJ (N.D.Cal. Mar. 18, 1991 and Apr. 1, 1991), but is largely repeated here for convenience.

### A. Provisions of Proposition 132

As noted above, Proposition 132 clearly prohibits the use of gill and trammel nets to take rockfish within the state's coastal waters, i.e., from 0 to 3 miles offshore. *See* MRPA §§ 2(d), 4(a). Not only is the capture of rockfish with these nets strictly prohibited, *id.* § 4(a), but Proposition 132 prohibits the possession or receipt of rockfish caught by such nets. *Id.* § 11.[2] Proposition 132 also provides for a three-year phasing out of the use of such nets to take species of fish *other than* rockfish, *id.* § 4(b), and also provides a compensatory scheme for non-rockfish-fishermen adversely affected by this prohibition. *Id.* § 7(b).

Prior to the passage of Proposition 132, use of gill and trammel nets to take rockfish was already prohibited in state waters north of 38 degrees latitude, *i.e.,* north of Point Reyes, California. In Northern California waters south of Point Reyes the use of gill and trammel nets had been prohibited in state waters from 0 to 3 miles offshore, but individuals like plaintiffs had until recently continued to fish for rockfish in federal waters from 3 to 200 miles offshore under gill and trammel net licenses issued by the State. In Southern California, however, rockfish continued to be taken by use of such nets in both state and federal waters. Thus both the arguments supporting Proposition 132 and a facial reading of its provisions establish that one of the main purposes behind the Proposition was to create a uniform ban in all

state waters on the use of such nets to catch rockfish.

Moreover, the text of Proposition 132 makes no reference to federal waters, nor to any other waters other than those traditionally viewed as being under the authority of the State. *See* MRPA § 2(d). Thus the initial impression is that the provisions of the MRPA are to be enforced only within state waters, *i.e.,* within those areas from 0 to 3 miles offshore.[3]

### B. Federal Regulation of Marine Resources

Under the Magnuson Fishery Conservation and Management Act ("MFCMA" or "Magnuson Act"), 16 U.S.C. §§ 1801–82, Congress established a regulatory program conserving and managing the fishery resources of the United States. Through the MFCMA, the United States asserts its "sovereign rights and exclusive fishery management authority over all fish, and all Continental Shelf fishery resources, within the exclusive economic zone ["EEZ"]." 16 U.S.C. § 1811(b). The EEZ extends from the seaward boundary of each of the coastal States to 200 miles offshore. *Id.* § 1802(6). In California, such "seaward boundary" is at 3 miles offshore.

The MFCMA also established regional councils, under the direction of the Secretary of Commerce, charged with adopting and administering management plans for fisheries within the EEZ. *Id.* § 1852. Although

---

2. Sections 4(a) and 11 of the Marine Resources Protection Act of 1990 specifically provide as follows:

> Notwithstanding any other provision of law, gill nets and trammel nets may not be used to take any species of rockfish.

MRPA § 4(a).

> It is unlawful for any person to take, possess, receive, transport, purchase, sell, barter, or process any fish obtained in violation of this article.

*Id.* § 11.

3. This conclusion is also supported by the legislative findings preceding the text of Proposition 132, which provide as follows:

> The marine resources of the State of California belong to all of the people of the state and should be conserved and managed for the benefit of all users and people concerned with

their diversity and abundance for present and future generations' use, needs and enjoyment. Current state laws allow the use of indiscriminate and destructive gear types (gill nets and trammel nets) for the commercial take of fish in our *nearshore* waters that entangle [nontargeted or non-commercial marine life].
> ... Therefore, the law governing the use of gill nets and trammel nets in our *coastal* waters ... should be permanently established [according to the provisions of Proposition 132].

*See* Complaint, Ex. A (Mar. 15, 1991) (emphasis added). Thus an initial reading of the legislative findings is consistent with a conclusion that the prohibitions set forth in Proposition 132 were to be enforced only in those waters near the California coast, *i.e.,* in State waters from 0 to 3 miles offshore. This conclusion is also consistent with the position that the dangers such nets pose to non-commercial marine life are most evident where the nets are used in shallower waters.

the Act allows state regulation of state-licensed vessels operating in the EEZ, *id.* § 1856(a)(3), any state fishing regulation must be found consistent with the MFCMA, the regional plan, and any related federal regulations in order to permit its enforcement in the EEZ. *See, e.g.,* 50 C.F.R. § 663.3(c) (1990).

In California, the Pacific Fishery Management Council ("Pacific Council") governs implementation of plans under the MFCMA, and for the waters offshore of California, Oregon, and Washington, the Pacific Council has specifically adopted the Pacific Coast Groundfish Plan (the "Plan"), 50 C.F.R. §§ 663.1–663.29 (1990). The Plan also encompasses rockfish in the EEZ. *Id.* § 663.2. There is also a review procedure in place whereby a state may petition the Pacific Council for a determination that a state regulation is consistent with the goals and objectives of the Plan, thus enabling enforcement of the state regulation in the EEZ following completion of specified notice and comment procedures. *See* Procedure for Reviewing State Regulations, 56 Fed.Reg. 753 (Jan. 8, 1991).

Moreover, the Plan authorizes the use of gill and trammel nets for the taking of groundfish, including rockfish, in certain areas of the EEZ: "This plan authorizes the use of ... set nets (gill nets and trammel nets) as legal gear for commercial harvest of groundfish. The use of set nets is prohibited in all areas north of 38 [degrees] N. latitude." Plan § 6.3.2.3 (attached as ex. 1 to Sparer Declaration). Section 663.22 of the regulations implementing the Plan provides, in part:

> *Set nets.* (1) Fishing for groundfish with set nets is prohibited in the fishery management areas north of 38.00 [degrees] N. latitude." 50 C.F.R. § 663.22(d).
>
> Set net[s] ... must be ... [m]arked at the surface, at each terminal end, with a pole, flag, light, radar reflector, and a buoy displaying clear identification of the owner." *Id.* § 663.22(c)(1).

**C.** *Proceedings Following Passage of Proposition 132*

After adoption of Proposition 132 in the November 1990 general election, the Department was apparently uncertain just how far geographically the provisions banning the use of gill and trammel nets to take rockfish could be enforced. In a letter dated November 21, 1990, gill and trammel net permittees were informed that, effective immediately, use of such nets in catching rockfish within state waters—*i.e.*, from 0 to 3 miles offshore—was absolutely prohibited, but that such ban would not be enforced in federal waters in the EEZ—*i.e.*, from 3 to 200 miles offshore. *See* Sparer Declaration, Oct. 28, 1992, Ex. 5; Van Der Naillen Declaration, Mar. 15, 1991, Ex. 2.[4] This conclusion was apparently based at least in part on the original opinion of the Office of the Attorney General concluding that Proposition 132 could not be enforced in federal waters as well as a memorandum and letter dated December 21, 1990, from the Department's Chief Legal Advisor Eugene V. Toffoli, indicating that although the absolute ban on use of gill and trammel nets to take rockfish could be immediately imposed in state waters, there was "substantial question" as to whether the ban could be extended to federal waters in the EEZ; thus the only recommendation Toffoli made with respect to enforcement of the prohibition in federal waters was that the Pacific Council be petitioned as soon as possible for a consistency determination. *See* Van Der Naillen Declaration, Ex. 3, at 1.

The record establishes that this was defendants' accepted view of the extent to which the prohibition could and would be enforced until the Office of the Attorney General had reevaluated the issue, concluding in an opinion dated February 21, 1991, that:

> in our opinion the plain language of section 4(a) indicates that the voters intended an absolute prohibition consistent with California's extraterritorial penal jurisdiction.... Accordingly sections 4(a) and 11

---

**4.** The November letter putting the permittees on notice, however, did state that "[s]hould the prohibition be determined to be consistent with the Groundfish Management Plan, we expect the Pacific [] Council to extend the prohibition throughout the [EEZ] early in 1991." *See* Van Der Naillen Declaration, Ex. 2, at 1.

apply in the absence of federal conflicts out to two hundred nautical miles.

*See* Sparer Declaration, Ex. 4, at 7.

In a letter dated February 8, 1991, the Department petitioned the Pacific Council for a finding that the rockfish provisions of Proposition 132 were consistent with the governing federal standards and plans, and if so, how far out to sea could such provisions be enforced. *See id.,* Ex. 3. This original request was augmented by a subsequent letter, dated February 26, 1991, stating that in light of the Office of the Attorney General's reconsideration of the issue, the ban on the use of gill and trammel nets in fishing for rockfish did in fact extend to include the EEZ. *See id.,* Ex. 6.

Apparently in reliance on this reversal of opinion, defendant Bontadelli also informed gill and trammel net permittees in a letter dated February 28, 1991, that, "effective immediately," the provisions of Proposition 132 prohibiting the use of such nets in catching rockfish would be enforced in the EEZ zone as well as state waters. *See id.,* Ex. 5.

At a public meeting held on March 13, 1991, the Pacific Council stated that it was unable to determine whether Proposition 132 was consistent with the federal rockfish Plan because the State had not provided sufficient information to permit the Pacific Council to reach a final decision. However, the issue was scheduled for reconsideration at the following meeting of the Pacific Council, which was to be held in April 1991.

### D. *The Court's Previous Orders*

On March 18, 1991, the Court granted plaintiffs' motion for a temporary restraining order and enjoined defendants' from enforcing the provisions of Proposition 132 with respect to using gill and trammel nets to take rockfish from federal waters. In late March 1991, the Court granted the interveners' (Committee to Ban Gill Nets, Dolphin Connection, Earth Island Institute, Doris J. Allen, and Leo T. Cronin) motion to intervene.

On April 1, 1991, the Court granted plaintiffs' motion for a preliminary injunction enjoining defendants from enforcing the provisions of Proposition 132 concerning the use of gill and trammel nets to take rockfish from federal waters. The Court stated that "[t]he parties agree that the decision whether section 4(a) may be enforced in federal waters depends on a 'consistency determination' by the Pacific [ ] Council." Apr. 1, 1991 Order, at 4. In a brief July 1991 order, the Court stated that the preliminary injunction shall remain in effect pending further order of the Court.

### E. *The Pacific Council's Consistency Determination*

On April 10, 1991, the Pacific Council convened to determine the consistency of Proposition 132's ban of gill nets in federal waters with the gill net provisions of the Plan. At the April hearing, the Pacific Council received reports from its staff and various advisory panels, including the Council's Scientific and Statistical Committee, the Groundfish Management Team, and the Groundfish Advisory Subpanel. *See* Sparer Declaration, Exs. 15–18. Lawrence Goldenhersh, counsel for intervener Committee to Ban Gill Nets, also submitted a memorandum containing arguments and rebuttals. *Id.,* Exs. 19–20. Plaintiffs too submitted written materials. *Id.,* Ex. 21. At the hearing, the Pacific Council heard testimony from both the plaintiffs and intervenors.

The Pacific Council's advisory panels met on several occasions following the hearing. On July 11, 1991, the Council met again in a noticed public hearing. Attorneys for plaintiffs and intervenors made further presentations to the Council. Defendant Peter Bontadelli gave a pitch for consistency too. At the close of the hearing, many Council members explained their positions and voted, 8 to 3, with one abstention,[5] to find the disputed provisions of Proposition 132 *inconsistent* with the Plan. *Id.,* Ex. 33.

### F. *Attempts to Appeal the Pacific Council's Consistency Decision*

After the consistency decision, both defendants and interveners attempted to discover

---

**5.** Plaintiffs, in their moving papers, state that the vote was 9 to 3 with one abstention. Interveners, however, point out that although the Chairman cast a vote, under Plan rules the Chairman's vote only counts in the case of a tie. In any event, the exact vote is not determinative or significant, relevance attaches only to the fact that a majority found inconsistency.

what appeal or reconsideration rights they possessed since the Plan was silent on the subject. Intervenor Doris Allen submitted a petition pursuant to the Administrative Procedure Act (5 U.S.C. § 553(e)), requesting the Secretary of Commerce to vacate the Council's determination and set a new hearing. *See* Sparer Declaration, Ex. 35. However, the parties were informed that there is no provision for appeals of Council consistency determinations to the Secretary. *Id.* Ex. 37; Gray Declaration, Nov. 20, 1992, Ex. 16.

In February 1992, the new Director of the Department, Boyd Gibbons, attempted to place a motion rescinding the July 11, 1991 consistency decision on the agenda of the Council's March 1992 meeting. At the March 9, 1992, Council meeting, Gibbons refrained from making the motion, but did move the Council to add to the agenda of its next meeting another discussion of Proposition 132. The Council voted against the motion, with at least one Council member stating that there was no new information before them to warrant another review. Sparer Declaration, Ex. 42.

### G. *Current Status of this Action*

Plaintiffs now move this Court for summary judgment, seeking in essence a permanent injunction enjoining defendants from enforcing the provisions of Proposition 132 concerning the use of gill and trammel nets to take rockfish from federal waters. Defendants and interveners oppose the motion.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Recognizing that summary judgment motions can contribute significantly to the resolution of litigation when there are no factual issues, the Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quoting Fed.R.Civ.P. 56(e) (emphasis added) and citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 321–22, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## III. DISCUSSION

█ Both parties agree that if a state statute is determined to be in direct conflict with federal law, the state law is preempted. Plaintiffs claim that the Pacific Council's decision of inconsistency between Proposition 132 and the Plan should have res judicata effect. In any event, even if the Council's finding is not binding, plaintiffs argue that Proposition 132 should be preempted because it is in conflict with federal law.

Defendants and intervenors claim that summary judgment should be denied because the Pacific Council's opinion is merely advisory and that the language of the Magnuson Act does not conflict with Proposition 132.

### A. *Res Judicata*

For this Court to be bound by the Pacific Council's ruling, the administrative agency must have been acting in a "judicial capacity" at the time the ruling was issued. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (courts have applied res judicata when an administrative agency is acting in a judicial capacity and the parties have had an adequate opportunity to litigate the issues of fact).

█ Among other considerations, the agency must have acted in a judicial capacity for res judicata to attach. This includes complying with the standards of "procedural and substantive due process that attend a valid judgment by a court." *Paramount Transport Systems v. Local 150*, 436 F.2d 1064, 1066 (9th Cir.1971). Although no single formula exists to capture all the essential elements of adjudicatory procedure that may entitle administrative decisions to preclusive effects, *see* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4475, at 765 (1981), certain elements such as cross-examination, the right to subpena witnesses, and testimony under oath have proven important. *See, e.g., Plaine v. McCabe*, 790 F.2d 742, 744 (9th Cir.), *as amended on reh'g*, 797 F.2d 713 (9th Cir. 1986); *Nasem v. Brown*, 595 F.2d 801, 807 (D.C.Cir.1979). However, preclusion has been accepted despite the absence of a jury trial and limitations on discovery. *See, e.g., Consolidated Express, Inc. v. New York*

*Shipping Ass'n*, 602 F.2d 494, 504–05, 512 (3d Cir.1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980).

· The Court, however, need not reach the question of whether the Pacific Council's consistency determination should be afforded res judicata effect. Although a persuasive argument can be articulated in favor of preclusion, the Court will not rest its decision on a finding of res judicata. Rather, the Court turns to the merits of preemption.

### B. *Conflict Between Federal and State Law—Preemption*

█ Plaintiffs are entitled to summary judgment on the basis of preemption. No dispute exists as to the text of the federal and state laws in question. Simply stated, these laws conflict and, under the doctrine of preemption, federal law prevails.

█ Under the Supremacy Clause, U.S. Constitution, art. VI, cl. 2, the laws of the United States, including federal regulations promulgated pursuant to statutory authorization, take precedence over state laws. *See Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

█ Federal law may preempt state law in several ways. First, Congress may expressly define the extent to which it intends to preempt state law. *Id.; Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, Congress may indicate an intent to preempt all state law in a particular field of regulation. *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 229–30, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Third, federal law may preempt state law to the extent that state law directly conflicts with federal law. *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375; *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). Plaintiffs argue that both the first and the third type of preemption applies; however the Court need only examine the third category to find preemption.

The Magnuson Act has been interpreted to allow state regulation in federal waters only

where the state law does not actually conflict with federal law. *See Southeastern Fisheries Ass'n v. Martinez,* 772 F.Supp. 1263, 1267–68 (S.D.Fla.1991) (state law attempted to limit the taking of Spanish mackerel in federal waters to an amount less than 2.99 million pounds annually while federal law permitted an annual quota of between 2.99 and 3.14 million pounds. The court found these two laws in direct conflict because federal law permitted the taking of up to 2.99 million pounds of Spanish mackerel whereas state prohibited the exact conduct); *Bateman v. Gardner,* 716 F.Supp. 595, 598 (S.D.Fla.1989), *aff'd,* 922 F.2d 847 (11th Cir. 1990), *and cert. denied,* —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991)⸱(state law banning shrimp harvest preempted where, under federal law, shrimp could be taken in disputed area); *State v. Sterling,* 448 A.2d 785, 787 (R.I.1982) (conflicting state provision imposing a landing-possession limit on flounder preempted); *F/V American Eagle v. State of Alaska,* 620 P.2d 657, 662 n. 10 (Alaska 1980) (to extent that a conflict exists between state regulations and federal regulations, state's authority preempted).

Under the Plan, as discussed in 50 C.F.R. §§ 602, 663.1–.29 (1990), applicable state regulations will be enforced in federal waters so long as they are consistent with the Plan. *See id.* § 663.3(c). Here, then, the federal Plan specifically applies to the taking of rockfish. *See id.* § 663.2. The Plan provides that gill nets are authorized for the commercial harvest of groundfish, but that fishing for groundfish with gill nets is prohibited in all areas north of 38 degrees N. latitude. *Id.* §§ 663.22(a), 663.22(d); Plan 6.3.2.3.

Section 4(a) of Proposition 132 provides that "[n]otwithstanding any other provision of law, gill nets and trammel nets may not be used to take any species of rockfish." Defendants insist, and seek to enforce, that Proposition 132 prohibits the use of gill nets in federal waters.

In essence, although federal law prohibits gill nets in federal waters north of 38 degrees N. latitude, federal law permits the use of such nets south of 38 degrees N. latitude. By expressly prohibiting gill nets north of 38 degrees N. latitude, federal law has, through its silence, necessarily implied that the use of gill nets south of 38 degrees N. latitude is authorized. Plaintiffs cannot comply with both the state and federal schemes unless they forgo their right to use gill nets south of 38 degrees N. latitude. As recognized by *Bateman, Martinez,* and *Sterling,* the possibility to comply with a more stringent state standard does not resolve the conflict between state and federal law. In those cases, the more severe state statutes were all stricken and federal law ruled federal waters.

Interveners challenge *Bateman, Martinez,* and *Sterling,* noting that all dealt with express federal language which conflicted with express state language. Here, interveners claim, although express state language exists, there is no express federal language. Rather, interveners believe that no conflict exists. In fact, the statute may be interpreted as leaving to the sound discretion of the state the decision of whether to allow gill nets south of 38 degrees N. latitude. Yet this interpretation misses the mark. Despite the lengthy arguments and the surrounding rhetoric, state law *prohibits* gill nets and federal law *permits* gill nets south of 38 degrees N. latitude in federal waters. This conflict justifies preemption.

In addition, interveners claim that the intent behind the Magnuson Act is consistent with Proposition 132. However, preemption may be based either on direct conflict or the obstruction of the goals and policies of federal law. *Martinez,* 772 F.Supp. at 1267. Plaintiffs need not demonstrate both. *See Florida Lime,* 373 U.S. at 141–42, 83 S.Ct. at 1217.[6]

---

**6.** Interveners also claim that the Court must apply a presumption in favor of finding the state law valid. While it is true that in areas of traditional state regulation, the Court must presume that Congress did not intend to preempt state regulation, *see Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1984), this presumption does not necessarily extend to areas of traditional federal regulation. Regardless of past history, ocean waters extending from 3 to 200 miles off state coastlines are considered areas of federal regulation. In any event, even if the presumption was employed by the Court, the result would be no different as Proposition 132 is preempted by the clear language evident in the federal scheme.

Moreover, even though the Court will not rule that the Pacific Council's consistency determination has res judicata effect in this matter, it does not mean that the Court should ignore the decision. Rather, the finding is entitled to deference. The authority to determine whether a conflict exists between state and federal law is vested in the Pacific Council. With its considerable expenditure of time and resources in this case and with the extensive materials it reviewed, the Council's decision reflects careful deliberation, not undue haste, and thus is worthy of some deference in this Court's consideration of the issue. The Council's finding of inconsistency is consistent with the Court's analysis of preemption.

Accordingly, because section 4(a) of Proposition 132 conflicts with the Magnuson Act, that section must fail when administered to the EEZ and defendants must be permanently enjoined from enforcing that section in federal waters. Summary judgment is thus appropriate for plaintiffs.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' motion for summary judgment is GRANTED.

2. Plaintiffs shall prepare and submit to the Court a proposed form of judgment by March 24, 1993. Defendants and interveners may file any objections to the proposed form of judgment by April 7, 1993. The Court will then issue judgment without further hearing.

IT IS SO ORDERED.

---

[7]. Plaintiffs also complain about Proposition 132's section 11, which makes it "unlawful for any person to take, possess, receive, transport, purchase, sell, barter, or process any fish obtained in violation of this article." MRPA § 11. However, with section 4(a) of Proposition 132 now being found preempted when extended to the EEZ, section 11 should not affect gill fish. In sum, section 11 survives and cannot be read in connection with section 4(a) which is now preempted as applied in the EEZ.

Further, plaintiffs' complaint contained claims based on Privileges and Immunities and equal protection. Because the Court finds for plaintiffs on the basis of preemption and because the Court summarily grants plaintiffs' requested relief, the Court need not review these additional allegations.